## Oldham's Trustee v. Boston Insurance Company.

(Decided December 10, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Insurance—Chose in Action and Contingent Asset.—A fire insurance policy is a chose in action and a contingent asset in the hands of the personal representative of the deceased insured which becomes absolute upon the happening of the contingency insured against, in which event it is the duty of the personal representative to collect the loss either with or without suit; unless it is otherwise provided in the policy or by statute.

2. Executors and Administrators—Legal Representatives.—The term "legal representative" primarily and ordinarily imports the same as the term "personal representative" unless the context or conditions under which it is used indicate a different meaning.

3. Executors and Administrators—How Co-Executors May Act.—Each co-executor or co-administrator may act, with respect to the representation and management of the decedent's estate, independently of the other, since they are regarded in law as one person, and each of them has the right to receive and collect debts due the estate as well as to pay debts owing by the deceased, and his authority is not taken away because a settle-

ment has been made, since the right to act continues as long as there are fiduciary duties to perform.

4.    Executors and Administrators—Collection of Insurance.—The right of the representative of the deceased to collect for a loss under a fire policy occurring after the death of the insured is not affected by the question as to who is entitled to the collected proceeds, since the right to collect exists independently of the beneficial interest in the sum collected.

R. A. McDOWELL for appellant.

F. M. DRAKE and GORDON & LAURENT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Mary R. Oldham, wife of Joseph A. Oldham, owned a dwelling house on Edgeland avenue in the city of Louisville, with some outbuildings situated on her lot. On the 10th day of April, 1915, she procured from the appellee and defendant below, Boston Insurance Company, a fire policy for the term of three years ending April 10, 1918. The defendant thereby insured Mrs. Oldham against loss from damage by fire to the extent of $2,700.00 on her dwelling, $500.00 on a two story building used as a stable and servants' rooms and $300.00 on household and kitchen furniture. In November thereafter Mrs. Oldham died testate and in her will she gave to her husband all of her personal property and a life interest in the real estate covered by the policy, with remainder to others and appointed as executors of her will her husband and one of the remaindermen, and they were likewise appointed by the will trustees thereunder. The two nominated executors qualified, but so far as this record discloses the husband of the deceased seems to have been the only one who took an active part in performing the fiducial duties imposed by the appointment. On March 18, 1917, and while the policy was in force, a fire occurred destroying the outbuilding upon which there was $500.00 insurance and damaging the insured dwelling. Proof of loss was made by the husband and furnished to the company and it paid him in settlement thereof the sum of $630.60, and he soon thereafter repaired and restored the property at a cost, according to the competent evidence, of $550.00, although it was shown that he stated the repairs cost him more than the amount of insurance collected, but the court held that his statements as to the amount expended were incompetent. On May 5, 1917, which was soon after the prop-

erty was restored and repaired, the husband died. On November 7 following, at the instance of the remaindermen under the will of Mrs. Oldham, the appellant and plaintiff below, Louisville Trust ICompany, was appointed trustee under the will and it brought this suit against defendant to recover the $630.60 which it paid to Mr. Oldham upon the ground that he had no right to collect it and that the payment to him was not a legal satisfaction of the claim. On February 7, 1916, at the instance of the husband the policy was changed so as to cover only his interest in the insured property, and the defendant relied upon that fact with other defenses to defeat a recovery. Upon trial the court held that, since the policy gave the defendant the right to pay the loss or restore the property, the expenditure by the husband of the proven amount of $550.00 for the latter purpose was a *pro tanto* satisfaction of the loss so far as the remaindermen were concerned, and that he had the right to change the policy as indicated, and judgment was rendered dismissing the petition, to reverse which plaintiff prosecutes this appeal.

The principal points urged against the propriety of the judgment are that, (1) under the facts the remaindermen under the will of Mrs. Oldham, and being the only ones for whom the plaintiff is acting, were entitled to at least their *pro rata* part of the proceeds of the policy and should have been paid their portion instead of it being paid to Mr. Oldham, the life tenant, executor and sole legatee; and (2) that a life tenant can not bind the remaindermen by improving the common property.

We may concede the correctness, as abstract principles of law, of the two points urged by counsel, but we are wholly unable to give them the effect which is sought to be made in this case. There is a wide difference in the law between who is *entitled* to the proceeds of a fire insurance policy and the one who is *entitled to collect* a loss arising thereunder; and, likewise, there is a difference between the right of a life tenant to *improve* the property and his right to *restore* it to its original condition with proceeds of a fire policy. The law is well settled that a fire insurance policy is a chose in action and does not partake of the nature of the property insured by it, and, at least as between the beneficiaries of the estate (be they heirs, legatees or devisees) and the personal representative of the estate, the policy is personal

property, and if a loss insured against occurs after the death of the insured the personal representative is entitled to collect for it, either with or without suit, regardless of the fact that the beneficiaries of the estate would be entitled to the proceeds after the payment of debts, unless a different purpose is plainly manifested by the terms of the policy. Williams on Executors, vol. 111, page 131; Cooley's Briefs on the Law of Insurance, vol. IV, pages 3696-3697; May on Insurance, vol. II, section 447-B; Georgia Home Insurance Co. v. Kinnier's Admrx., 28 Grattan 88; Haxall's Executors v. Shippen, 10 Leigh, 536; Wyman's Admrx. v. Prosser, 36 Barbour (N. Y.) 368; Richards on Insurance, 3rd edition, section 331; and Richardson's Admr. v. German Insurance Co., 89 Ky. 571. The latter case was a suit by the personal representative on a policy issued before his decedent's death to recover for a loss occurring after the death of the insured although others succeeded to the title of the insured to the destroyed property. The precise point involved here was not expressly decided, but it was impliedly so when this court sustained plaintiff's right to maintain the suit. This court held in Sanders v. Armstrong, 22 Ky. L. R. 1789, with reference to a fire insurance policy that: "Insurance is a personal contract, and appertains to the person called the insured, and not to the thing which is subject to the risk against which he is protected by the contract of insurance. It is not a contract running with land, in case of real estate, nor running with the personalty, so to speak, in the case of a chattel." Sustaining the above authorities and the statement from this court, the text in 14 R. C. L. 1365, says: "The general rule is that, between insurer and insured, a policy of fire insurance is a purely personal contract, by which the former agrees to indemnify the latter against any loss he may sustain by the destruction of his interest in the property insured. The contract does not attach to or run with the title to the insured property." See also Shaggett v. Phillips, 131 Ala. 478, 90 Amer. St. Rep. 95, 56 L. R. A. 461, and Continental Insurance Co. v. Munns, 120 Ind. 30, 5 L. R. A. 430. In the Kinnier case, *supra*, the right of the personal representative of the insured to collect for a loss occurring after his death under facts quite similar to those we have here was before the Supreme Court of the state of Virginia and it was contended that the *heirs* of the insured were the only ones who had the right to collect the insur-

ance, but the court held otherwise. In that case, as in this (as we shall see), the insurance was made payable to the insured and his "legal representatives." The court held that "legal representatives" as used in the policy must be given the same import as *personal representatives,* i. e., executors or administrators. The opinion says: "It is contended that by the terms 'legal representative,' used in the declaration pursuing the tenor of the policy, *the heirs* at law of Alexander Kinnier were intended, so far as the insured building is concerned. I do not thnik this is the proper construction of the policy. The policy declared upon, and as set out, is a contract to indemnify Alexander Kinnier personally. The words 'legal representatives,' as used, are of the same import as the words *executors, administrators, personal representatives.* The policy as set out is a simple contract, and upon the death of Alexander Kinnier passed like his bonds, notes, and other choses in action to his administratrix, and she only had a right of action upon it." The text in May on Insurance, *supra,* says: "The executors are the only ones who can enforce a (fire) policy unless the heirs are named. The property passes to the heirs, but the policy is not attached to and does not run with the estate, and only the representatives of the assured can recover." And in the note referred to in Williams on Executors it is said: "So, an unexpired fire insurance policy taken out by the deceased on real estate specifically devised is part of the personal estate of the deceased." To the same effect are the other cases, *supra,* except the policy involved in some of them stipulated that the loss should be paid to the insured, his *executors, administrators,* etc. The common import and the ordinary signification of the phrase, "legal representative," is equivalent to that of executor, or administrator, i. e., "personal representative." Thus in 25 Cyc. 176, the text says: "In the common use of the words (legal representative) and in its ordinary signification, a term equivalent to 'executor' or 'administrator.'" See also Black's Law Dictionary, 2nd Ed. 1020, and Words and Phrases, 2nd Series, vol. 3, pages 71-77. The ordinary signification of the term is, however, subject to be controlled like other legal terms by the context of the instrument in which it is used, and if that is such as to indicate a different meaning from the ordinary one that meaning will be applied by the courts. In the policy sued on in this case it is stipulated that: "Wherever

in this policy the word 'insured' occurs it shall be held to include the *legal representatives* of the insured." There is nothing in the context or the conditions under which the term is used to indicate a different significance or meaning than the ordinary one of "personal representative." So that we conclude that the parties by the use of the words "legal representatives" meant "personal representatives" and that if a loss occurred after the death of Mrs. Oldham (the insured) her executor or administrator would be empowered to collect therefor. Our Civil Code, section 732, subsections 17, 18 and 19, defines "personal representative," "real representative" and "representative," but there is no statutory definition given there or elsewhere of the term "legal representative." So that we are not prevented by any statute from applying to the latter term its ordinary and usual significance.

Independently, however, of what other courts may have said upon the question as presented we are thoroughly convinced that under the general principles and reasoning of the law, the executor or administrator of the insured is the proper person to collect for a loss under a fire policy occurring after insured's death under a contract made by him while living, unless there is some statute or stipulation in the policy to the contrary. If a decedent dies the owner of an unmatured note it is admitted by every one that its proceeds would be assets in the hands of the personal representative, primarily for the payment of debts and, secondarily, for distribution between those entitled thereto, and that the personal representative is the only one authorized to collect the note when it matures. An insurance policy, as we have seen, is no less a chose in action than the note in the supposed case. The only difference is that the note is a *certain* asset and in the course of time becomes collectable, while the fire policy is only a *conditional* or *contingent* asset, which becomes an actual one only upon the happening of the event insured against. But, when that event happens the chose in action becomes as absolute as a note and necessarily collectable by the same person. As to how the person who collects it shall apply the proceeds no more affects his right to make the collection than does the same question with reference to his disposition of the proceeds of the note. If, in this case, Mrs. Oldham had been indebted more than the amount of her personal property, who would question

the right of her creditors to appropriate the proceeds of this insurance to the satisfaction of their debts? Manifestly they would be entitled to have such proceeds applied in payment thereof, and the only person legally authorized to do that was the personal representative, Mr. Oldham. The fact that he collected the insurance without acting in conjunction with his co-executor can not destroy the legal effect of his action, for it is undeniably true that one co-executor may act in discharging his trust independently of the other one. Schouler on Executors, 3rd edition, section 400; 11 R. C. L., page 405; 18 Cyc. 1330, 1331; Hord's Admr. v. Lee, 4 T. R. Mon. 36, and Bryan v. Thompson; 7 J. J. M. 586. The fact that the executors had made a settlement with the county court did not terminate their power or authority to continue to act as executors as long as they had duties to perform in that capacity. It is frequently the case that such fiduciaries make settlements from time to time without affecting their authority to continue to act in the future. Our conclusion upon the whole case, and under the concrete facts presented, is that the husband, in his capacity of executor of his wife's will, not only had the authority to collect the insurance which is the subject matter of this litigation, but it was his duty to do so and that under the terms of the policy he, as executor, was the only one from whom the company could get a legal acquittance. It necessarily results from this conclusion that the judgment appealed from was correct although based upon different reasons which, in view of our conclusion, we need not consider.

Wherefore the judgment is affirmed.