## Godfrey, et al. v. Alcorn, et al.

### (Decided June 25, 1926.)

### Appeal from Lee Circuit Court.

1. Insurance.—Where vendee was beneficial owner, and had paid two-thirds of purchase price of property destroyed by fire, insurer, paying vendor extent of her interest in property, is not entitled to be subrogated to vendor's right to unpaid purchase money.

2. Subrogation.—Subrogation is creature of equity, to be applied when necessary to bring about an equitable adjustment between parties.

3. Vendor and Purchaser—Vendor Paid Balance of Purchase Price by Insurer on Destruction of Premises Partially Paid for by Vendee Cannot Also Collect Balance from Vendee, and Assignee of Vendor, with Full Knowledge of Facts, has no Greater Rights.— Vendor, paid balance of purchase price by insurer under fire policy on destruction of property, cannot, in addition, collect unpaid purchase price from vendee, who paid two-thirds of consideration, and was beneficial owner, and assignees of vendor, with full knowledge of facts, have no greater rights.

4. Specific Performance.—Vendee under bond for title, paying two-thirds of purchase price of property destroyed by fire, is entitled to specific performance of contract of purchase without further payment, on vendor's collecting balance of purchase price from insurer under fire policy.

5. Specific Performance.—Specific performance is remedy which chancellor may or may not enforce, depending on equities of situation.

6.  Specific Performance—Vendee, Seeking Specific Performance
    Against Vendor, Who Collected Balance of Purchase Price from
    Insurer, Must Repay Vendor Premiums Paid on Insurance Policy.
    —Vendee, seeking specific performance of contract to purchase
    property destroyed by fire without further payment to vendor,
    who collected balance of purchase price from insurer, must do
    equity by repaying vendor premiums paid on insurance policy.

THEO B. BLAKEY for appellants.

ROSE & STAMPER and S. P. STAMPER for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

On the 26th of March, 1921, appellees, Ethel Alcorn
and her husband, executed to the appellants Godfrey and
Chase their bond for a title to a certain house and lot in
Beattyville. The consideration was fixed at $1,000.00, of
which $350.00 was then paid, and notes executed for
$150.00 payable 60 days thereafter, and $500.00 payable
one year thereafter, each bearing interest. It was stip-
ulated in the bond that no deed was to be made until the
full purchase price and interest was paid, but that upon
such payment the first parties bound themselves to make
a good and sufficient conveyance of title. A few days
thereafter the purchasers were placed in possession of
the property and so remained in possession during all the
times hereinafter mentioned.

On the 13th of March, 1922, the vendor, Ethel Al-
corn, caused to be issued to her by an insurance company
a policy of insurance on her interest in the property for
$500.00, for a period of three years, and on the 22nd day
of May, 1923, the house on the lot was destroyed by fire
during the life of that policy, the house at the time repre-
senting at least two-thirds of the value of the property so
sold and agreed to be conveyed.

During the period, however, from the date of the
bond in March, 1921, to the date of the fire in May, 1923,
the purchasers had paid $650.00 of the purchase price,
together with the interest on the same, so that when the
fire occurred the unpaid purchase money was only
$350.00 and a small amount of accrued interest thereon,
amounting to $359.33. Thereafter the insurance com-
pany paid to Ethel Alcorn, the vendor in the bond, under
the contract of indemnity, exactly $359.33 in full settle-
ment of her $500.00 policy on the property. At the time

of such payment the insurance company required her to assign to it the unpaid purchase money note on the house and lot then amounting to that precise sum, under what is termed in the record an "article of subrogation."

Thereafter the insurance company by assignment transferred that note to the appellee, W. H. Beatty, a resident of Beattyville, who owned and occupied a house upon a lot immediately adjoining the one sold by Alcorn to appellants. The insurance policy so issued to Alcorn is not in the transcript, and there is no claim and nothing to show that there was any contract or agreement between the company and Alcorn by which in the event of loss her claim against the purchasers for unpaid purchase money should be assigned to the company.

In this equitable action by the purchasers wherein the facts stated above are admitted, and in which the Alcorns and Beatty are parties, Beatty has asserted his purchase money lien under the note assigned by Alcorn to the insurance company and by the latter to him. The court dismissed the plaintiff's petition and entered a judgment enforcing the lien asserted by Beatty, and the plaintiffs prosecute this appeal.

The initial question is, what was the effect in equity of the collection by Alcorn of the insurance money? Did that payment by the company to her cancel the remaining part of the unpaid purchase money represented by the note she assigned to the company? And if so was there anything to assign which created a beneficial interest in the company? And incidental to these questions is the further one whether upon the payment by the company to Alcorn there was any such state of case as authorized the application of the equitable doctrine of subrogation so as to affect the rights of the purchasers?

It is apparent that the insurance company when it paid the loss to Alcorn and took the assignment of the purchase money note was in full possession of all the facts, and it is equally clear that Beatty when he took the assignment of the note from the insurance company also was. They each, therefore, occupy the same status as Alcorn, so that the matter must be determined just as if the note was still held by Alcorn, and there was an effort by her to subject the property to its payment.

Clearly the purchasers were the beneficial owners of the property; they had an enforceable contract upon the payment of the full purchase price, and at the time of the

fire they had paid approximately two-thirds of the con-
sideration. They had been placed in possession by the
vendor when the bond was executed and have so remained
since, and there can be no doubt that whatever loss was
occasioned by the fire was their loss, and whatever insur-
ance was collected by Alcorn was collected because of the
destruction of their property, in which Alcorn had an
equity.

In the absence of an agreement therefor, the only
right of subrogation the insurance company could have
had must grow out of some equity arising for its benefit
from the nature of the transaction. Subrogation is es-
sentially a creature of equity, and is called in play by the
chancellor only when it is necessary to bring about an
equitable adjustment between the parties. We fail to
see, therefore, what equity there existed in favor of the
insurance company to justify it being indemnified by
Alcorn for the loss, when it had for a stipulated compen-
sation insured her to the extent of her interest. It had
merely done for compensation that which its contract re-
quired it to do, and in pursuance of the business it was
created to engage in.

We have in this state two cases holding that in sub-
stantially similar circumstances there is no right of sub-
rogation. In the case of the American Bonding Company
v. First National Bank, 85 S. W. 190, the bonding com-
pany in a contract of indemnity with an ice manufactur-
ing company had insured the latter against loss by reason
of fraud or dishonesty of one of its employees; and, hav-
ing been compelled as such insurer to make good a loss to
that company, it brought its action against the ice com-
pany and the bank jointly, alleging, in substance, that the
employee had raised certain checks of the ice company
upon the bank, and had thereby procured a given amount
of money. It sought because of the payment of such
checks by the bank to be subrogated to the rights of the
ice company as against the bank, and to make the bank
liable, by subrogation, to the bonding company for the
loss it had been required to pay.

In response to this contention this court said:

"It appears that the appellant, for a valuable
consideration, had guaranteed the fidelity and hon-
esty of the agent Weitkamp—in other words, it
became his surety—and had agreed, for this con-
sideration, to pay any losses sustained by reason of

·the dishonesty of Weitkamp. In view of these facts, we cannot understand upon what principle of equity the appellant here is entitled to be subrogated.''

The court in that case then referred to the case of Stewart v. Com., 104 Ky. 489. In that case the accommodation sureties on a circuit clerk's bond had been compelled to refund to the state money fraudulently collected from it because of the fraudulent acts and forged witness certificates issued by one of his deputies and sold to and collected by an innocent purchaser. The sureties, after making good the loss to the Commonwealth, brought their action against the innocent purchaser and sought to be subrogated to the right of the Commonwealth to enforce its claim against such innocent purchaser who had collected the amounts from the Commonwealth on the forged witness certificates, and the court held in that case, although the sureties were accommodation sureties and therefore occupied a much more favorable attitude than one who becomes surety for a consideration, that they were not entitled to such subrogation.

In this case to hold that the insurance company is entitled to subrogation and to enforce against the purchasers the collection of the unpaid purchase money, and thereby compel them to again pay a part of the purchase price which their property had already cancelled, because of the insurance contract held by Alcorn, would be to require the purchasers to pay about $360.00 more for the property than their contract price called for; and in addition would enable the insurance company, who had indemnified Alcorn for a consideration, to enforce that claim when there was no consideration for its assignment to it, and no equity that entitled it to such assignment.

Can it be said that if this purchase money note yet remained in the hands of Alcorn that she might enforce its collection after having collected from the insurance company, because of the destruction of the purchaser's property upon which she had a lien, the whole of the purchase price, and thereby collect from the purchasers $1,359.33 as the purchase price for property which she had contracted to sell to them for $1,000.00? The purchasers were the beneficial owners of the property, they not only had an enforceable bond for title but they were in actual possession and enjoyment of it, and when without fault upon their part it was destroyed by fire,

and because of an insurance policy held by Alcorn insuring her equity in it, their property was thus made to pay the balance of the purchase price, the chancellor looking to the equities of the situation will refuse to enforce as against the purchasers this unpaid purchase money and thereby make them pay more than the purchase price.

As, therefore, Alcorn could not enforce this alleged purchase money lien, neither could the insurance company or Beatty, each of whom became the assignee of the note with full knowledge of the facts, and who in all respects stood in Alcorn's shoes.

We are impelled, therefore, to the conclusion that there was no equity in the insurance company authorizing the assignment of this note to it, and that the plaintiffs for the reasons hereinafter stated were entitled to a specific performance of their contract of purchase.

We are not unmindful of the fact that there is a diversity of authority on the question whether an insurance company who pays a loss to a lien holder is entitled to subrogation where there is no agreement for the same; but we are convinced the rule herein stated is the sounder and better one, and that its application will come nearer bringing about justice in each case, and we likewise are bound by the Kentucky authorities cited, which we conceive to be based upon purer and higher equitable principles than those cases holding the contrary view.

Nor is our holding that the purchasers are entitled to specific performance contrary to the views expressed in Wheeler v. Gahan, 206 Ky. 366. In that case a lessee holding under a lease with an option to purchase at a stated price during the life of the lease went to the owner during his holding and notified her of his purpose to exercise the option at the fixed price. A controversy arose between them as to whether certain fixtures were embraced within the price fixed, and during that controversy and before it was adjusted, improvements on the property were destroyed by fire. The owner had insurance to the amount of more than five-sixths of the fixed sale price and collected the same, whereupon the vendee who had notified her of his purpose to exercise his option of purchase brought his action for specific performance and asked that the purchase price named be abated in a way commensurate with the loss. This court declined under the facts of that case to decree a specific performance.

The essential difference in the facts are that in the Wheeler case no part of the consideration had ever been paid, while in this case before the fire approximately two-thirds of the consideration had been paid. In that case there was a mere option to purchase while in this case there is an enforceable bond for a title. In that case there was a controversy pending at the time of the fire as to whether certain fixtures were embraced within the fixed purchase price, while in this case there is no controversy.

Specific enforcement is a remedy which a chancellor may or may not enforce, depending upon the equities of the situation. In the Wheeler case there was a refusal to enforce it as recited in the opinion because the principal part of the property contracted for had passed out of existence, and thereby the situation of the parties had so changed with reference to the subject matter of the contract that the court would not presume the parties would have contracted for the property after the fire, or that the vendor would have agreed to convey, or the vendee to take the same in its changed condition; that to do so would be to make a new contract for the parties.

But no such conditions existed here. The parties had entered into an enforceable contract, the purchasers had paid about two-thirds of the purchase price before the fire, they had not only become the beneficial owners of the property but they were in possession of it as owners, and to now deny them the right of specific performance after a part of their property has cancelled the remaining purchase price would be to impose upon them an unauthorized burden.

Nothing is said in the record about the repayment by the purchasers to the vendor of the premiums paid by the latter on the insurance policy which inured, as we have seen, to their benefit; but as the purchasers are asking the enforcement of an equity they will be required by the court as a condition to its enforcement that they also shall do equity and repay to the vendor the premiums so paid by her on the insurance policy.

The judgment is reversed, with directions to dismiss the cross-petition of Beatty, and to adjudge specific performance in favor of the plaintiffs upon the terms stated. Whole court sitting.