## Fogg et al. v. London & Provincial Marine & General Insurance Company, Limited, of London.

(Decided February 27, 1931.)

WOODWARD, HAMILTON & HOBSON and WILBUR FIELDS for appellants.

CHAS. W. MORRIS and FRANK GARLOVE for appellee.

Opinion of the Court by Judge Thomas—Affirming.

James C. Lackie owned a billiard hall in the second story of a building on Fourth street in the city of Louisville, which he operated under the trade-name of Hawaiian Billiard Parlor. On February 16, 1928, he procured from the appellee and defendant below, London & Provincial Marine & General Insurance Company, Limited, of London, hereinafter referred to as defendant or insurer, a fire policy on the contents of his establishment for a period of one year, and it covered loss to the amount of $3,000. The policy did not run in his individual name, but was issued in his trade-name, "Hawaiian Billiard Parlor." On June 8, 1928, and while the policy was yet in force, he sold his business and the insured property to the appellant and plaintiff below, Howard Fogg, and at the same time transferred in writing his interest in the policy to his assignee, but "subject to the consent of London and Provincial Marine and General Insurance Co., Ltd.," of London. Fogg immediately took charge of the business, and on July 21 thereafter the contents of the building were damaged by fire to the extent, as plaintiffs claim, of $1,682.25. The insurer, contending that the policy had not been transferred pursuant to the required provisions contained in it, declined to pay any part thereof, and this action was later filed by plaintiffs, the assignee and assignor of the policy, against it to recover the amount of the alleged loss.

The answer denied liability upon the ground stated, and at the close of plaintiffs' testimony the court sustained defendant's motion for a peremptory instruction in its favor, and, upon the verdict thereupon returned, the court dismissed the petition, and from that judgment plaintiffs prosecute this appeal.

It is stipulated in the policy, as a part of it, that "this entire policy shall be void . . . if any change other than by the death of the insured, take place in the interest, title, or possession of the subject matter of insurance (except change of occupants without increase of hazard), whether by legal processes or judgment or by voluntary act of the insured, or otherwise;" and it is the failure to comply with that provision that constitutes the defense to the action. It is sought to be avoided by two contentions made by plaintiffs, which are: (1) That the requisite consent of the insurer (defendant) was waived by it; and (2) that, the policy having been

issued to the Hawaiian Billiard Parlor, the trade-name of Lackie, the insured therein, it had the effect to insure the property itself as covered by the policy, and that the insurance, if loss occurred, was payable to whomsoever was the owner at the time of the fire, and because of which the policy was and is not governed by the general principle of law to the effect that fire policies are obligations running to and in favor of the insured whose title and interest is sought to be protected; it being conceded that the latter rule is the ordinarily prevailing one. In other words, the contention is, that the policy here involved, because of the fact already stated, and the further stipulation contained therein saying that the insurance covers "all property of every description their own or for which they may be legally liable, or sold but not removed," the obligations assumed by the insurer in the policy are for the benefit of whosoever is the owner of the property at the time of the fire under the principles governing policies issued mostly to bailees and covering property of all "whom it may concern" so as to embrace all property in the possession of the named insured, although he may not be its owner. It will be perceived that contention 1 is one of fact, while contention 2 is one of law. They are both appropriately disputed by defendant, and will be disposed of in the order named.

1. The only two witnesses who testified concerning the waiver were Lackie and Fogg, the assignor and assignee of the policy. The local agents through whom the insurance was procured were Gaunt & Harris in Louisville, Ky. All that Lackie said in his testimony with reference to the transfer of the policy from himself to Fogg was: "I talked with Mr. Harris about selling the property and transferring the insurance to Mr. Fogg; he said it was all right and would be transferred on my request. He also asked me about getting Mr. Fogg to take more insurance." But he said that he never requested from either of the agents, or any one representing them, to give their consent, or that of the insurer, to the transfer as was provided in the policy by the language hereinbefore inserted.

Fogg testified, in substance, that, on the day he purchased the property, but before the trade was consummated, he called over the telephone the insurance office of Gaunt & Harris and stated to them that he had theretofore obtained many insurance policies on the various businesses in which he had been engaged, and had seen

a number of others, but had never seen one issued to and running in the trade-name of the business, and inquired of them if a policy so issued was good, and that he was informed that such a policy was "all right." He stated that in his telephone conversation he said:

"This is Howard Fogg; of the Louisville Hotel. I am buying the Hawaiian Billiard Parlor from Mr. Lackie and he has an insurance policy issued to the Hawaiian Billiard Parlor and I want to know if it is all right and if I could increase the insurance, and he told me that it was perfectly all right and I agreed to come and see him in a few days, or he was to come by the pool hall, he said he frequented the pool hall and played pool often. I was too busy to see him then.

"Q. Is that all the conversation you had with him? A. I asked him if the policy was all right. He said it was all right as it was, and he would change it or fix the increase if I would come by the office, or he would come by the pool room.

"Q. Did you have any further conversation with him? A. I don't recall anything further."

He further testified, in substance, that he never told any agent or any one authorized to represent the defendant that he had actually purchased the property, but was only negotiating for it and had about agreed upon the terms of the deal. He was then asked and answered:

"Mr. Fogg, is it not a fact that when you say you wanted to satisfy yourself about the insurance you mean that you wanted to satisfy yourself about two things—first, whether the insurance in the name of the Hawaiian Billiard Parlor was valid insurance? A. Yes.

"Q. And second, whether you could get an increased amount of coverage; isn't that correct? A. Yes.

"Q. You didn't ask Mr. Harris or Mr. Gaunt during that conversation directly to transfer that policy from Mr. Lackie to you, did you? A. I asked the gentleman I talked to if it was necessary to have it changed to my name, would he do it, and he emphatically said 'yes.' "

After the fire Fogg went into bankruptcy, and he was examined before the referee in bankruptcy as to the

property he owned, and he was inquired about insurance on the contents of the billiard parlor that he had purchased from Lackie, and he positively denied that he had any insurance on that property. During his cross-examination, while giving the depositions in this case, he was confronted with that testimony, and his effort to explain it away is most convincing, to say the least of it, that he never regarded the policy as having been legally transferred to him, since, if it had been done, he could never have answered in the bankruptcy examination that he had no insurance without committing perjury. Of course such a contradiction of his testimony given at this trial would not of itself authorize an absolute discarding of it in this case so as to authorize the giving of a peremptory instruction against him; but his testimony in the bankruptcy proceeding is potent as illustrating his then entertained view of the extent and legal effect of his telephone conversation with the insurance agent, and which coincides with our view, that there was never a waiver of the required consent of the company to a transfer of the policy. At most it was only an agreement to transfer the policy in case the trade was effected and proper application should be made therefor. In other words, the most that can be gleaned from the testimony is, that some one at the other end of the telephone line, supposedly Mr. Harris, consented verbally (and which perhaps would be sufficient to waive the requirement that the consent to the transfer should be in writing) that defendant through him and his agency would make and consent to the proper transfer of the policy after the transfer of the title to the insured property upon due application therefor. So that the telephone conversation embodied only the basis for a future consent if requested.

Insurance contracts are governed by the same rules as prevail with reference to other character of contracts, with the qualification that, inasmuch as the provisions of the printed policy are couched in the language employed by the insurer, it in cases of doubt should be interpreted against him or it, and in favor of the insured; but that rule does not mean that any other principle of the law of contracts affecting the obligations of the policy shall not apply in favor of the parties to it the same as they do to other character of contracts. Therefore any state of facts that would not constitute a waiver in other character of contracts would have the same impotent effect with

reference to insurance contracts. In other words, there is no peculiar or distinctive principle of law that would create from a given state of facts a waiver of provisions in an insurance policy different from what would produce a waiver in any other commercial contract. If the negotiations for the consent of the company to the transfer of the policy had occurred after the purchase was completed and after the policy had been duly assigned by the insured, and the company had then consented to it, and perhaps orally, an entirely different question would be presented. But inasmuch as nothing of the kind happened and that the only conversation with reference to the policy was principally concerning the name in which the policy had been written, and at most only an agreement to consent to make the transfer in the future upon application, we see no room for the application of the doctrine of waiver, and, being so convinced, it is our conclusion that the court properly determined that there was no waiver of the provision with reference to consenting to the transferring of the policy.

2. Taking up now for disposition the legal question involved in contention 2, we find that generally and almost universally "insurance is a personal contract, and appertains to the persons called the 'insured,' and not to the thing which is subject to the risk against which he is protected by the contract of insurance." Sanders v. Armstrong, 61 S. W. 700, 22 Ky. Law Rep. 1789; Oldham v. Boston Insurance Co., 189 Ky. 844, 226 S. W. 106, 16 A. L. R. 305; 14 R. C. L. 1365; Shadgett v. Phillips, 131 Ala. 478, 31 So. 20, 56 L. R. A. 461, 90 Am. St. Rep. 95; Continental Insurance Co. v. Munns, 120 Ind. 30, 22 N. E. 78, 5 L. R. A. 430; and numerous other text-writers and cases that could be cited.

But, as will be seen from the text in 26 C. J. 85, sec. 82, policies are sometimes issued covering property held by the insured in trust, as bailee, or on commission, and, perhaps, other relationships, in which case the rule is that all property so in the possession of the named insured in such representative capacities is covered by his policy, although he is not the title holder or owner thereof. It is upon that doctrine and adjudged principle in the law of insurance that learned counsel for plaintiffs rely in support of the contention now under consideration. One of their chief references in support of their position is the text of Corpus Juris above referred to, a part of which is inserted in their brief. But, when

the entire section is examined, it readily will be seen that it has no application to facts such as are here involved, notwithstanding the relied on statement in the policy that the insurance covers property of others for which the insured "may be legally liable, or sold but not removed," since that language was only intended to apply if the insured was in possession of property in any of the representative capacities above referred to wherein he was not the owner of the insured property; but it was not intended to apply to a case like this where the insured did own the property at the time of the obtention of the insurance and transferred all of his title to his assignee. The relied on portion of the text says: "Such policies are termed 'floating policies;' they cover property belonging to other persons coming into the possession of insured in trust after the issuance of the policy, but they frequently exclude liability for loss of goods which are otherwise specifically insured," etc.

However, the same text preceding that excerpt, after stating that the ordinary policy describing the insured and the property covered, does not embrace property held in trust, in the absence of some provision therefor, says: "But it is usual for persons engaged in the business of keeping property for others, on account of which they may be liable, to insure such property under policies covering goods held by them 'in trust;' but this term does not imply a technical trust, but only possession of property of others, for which the insured may be called on to account." Then immediately follows the excerpt copied by counsel into their brief , but which evidently refers to "such policies" as are issued to persons who are in the possession of the property of others and "for which they may be called upon to account." We have no such facts here, and the principle of law contended for is clearly inapplicable.

Wherefore the judgment is affirmed.