**TWIN CITY FIRE INSURANCE COMPANY, Appellant,**

v.

**WALTER B. HANNAH, INC., Don Dunaway and Marquita Dunaway, and Buckeye Union Fire Insurance Company, Appellees.**

Court of Appeals of Kentucky.

March 21, 1969.

As Modified on Rehearing June 6, 1969.

Malcolm Y. Marshall, Ogden, Robertson & Marshall, Louisville, for appellant.

Marne Q. Miller, Portsmouth, Ohio, for W. B. Hannah, Inc.

J. D. Atkinson, Sr., Greenup, Rhinehart S. Shepherd, Greenup, for Don and Marquita Dunaway.

G. B. Johnson, Jr., Dysard, Johnson & Welch, Ashland, for Buckeye Union Fire Ins. Co.

HILL, Judge.

The controversy on this appeal involves the liability of two insurance companies growing out of policies issued by each on the same property but to the holders of different interests, covering loss by fire and other casualties not material here. In order to simplify a statement of the case we shall by-pass some of the inconsequential details.

Twin City Fire Insurance Company (hereinafter Twin City) issued a policy of insurance to Harry and Dorothy Kinker (hereinafter Kinker) covering fire loss on a dwelling house in South Shore, Kentucky. The limit of liability was $5,000.

Thereafter Kinker deeded the insured property to Walter B. Hannah, Inc. (hereinafter Hannah) and Hannah assumed the payment of Kinker's mortgage indebtedness to a local bank. There was an issue in the trial court as to whether Twin City's coverage continued in effect after this transaction, but for the purposes of its appeal Twin City now waives the point.

Later Hannah entered into a contract (not a deed) with Don and Marquita Dunaway (hereinafter Dunaway), under which they promised to pay $4,500 for the property in installments with a down payment of $700 and agreed also to keep the house insured in an amount not less than $3,800 for the benefit of Hannah as its interest might appeal.

Dunaway insured the house with Buckeye Union Fire Insurance Company (here-

inafter Buckeye) for $5,000. Neither company knew of the policy of the other, but each policy contained a "proportion" clause in the event of other insurance. Thereafter the house was destroyed or partially destroyed by fire. At the time of the fire the unpaid balance of Dunaway's purchase-money debt to Hannah was $3,450.

Twin City having denied coverage, Hannah filed this suit against Twin City; by various pleadings, Dunaway and Buckeye were joined.

The trial court found the fire loss to be $4,500 and adjudged that Twin City and Buckeye each pay half of the loss.

Twin City has appealed, urging that (1) the limit of liability under its policy cannot exceed the interest of the seller; (2) it is entitled to be subrogated to the rights of Hannah against Dunaway; and (3), (4) and (5) incompetent evidence was admitted.

■ We readily agree with appellant's first point stated thus: "Where a Fire Insurance Policy Insures Only the Seller, and Not the Buyer, Under a Contract of Sale of Property, and Before the Sale Is Consummated and the Purchase Price Paid the Property is Damaged by Fire, the Insurance Company Is Liable Only to the Extent of the Interest of the Seller in the Property, and Is not Liable Also for the Interest of the Buyer."

See KRS 304.652, where it is said, "such insurance can be applied only to his [insured's] proper interest." See also Fogg v. London & Provincial Marine & General Ins. Co., 237 Ky. 636, 637, 36 S.W.2d 44; Saunders v. Armstrong, 22 K.L.R. 1789, 61 S.W. 700; Oldham's Trustee v. Boston Ins. Co., 189 Ky. 844, 226 S.W. 106, 16 A. L.R. 305 and American Equitable Assurance Co. v. Newman, 132 Mont. 63, 313 P. 2d 1023.

■ A fire insurance policy insures an "interest in," not the property itself.

Home Ins. Co. v. Koob, 113 Ky. 360, 68 S. W. 453, 58 L.R.A. 58.

On the second point we are confronted with Godfrey v. Alcorn, 215 Ky. 465, 284 S.W. 1094, 51 A.L.R. 925, which is cited in 44 Am.Jur.2d 747 (Insurance, § 1820) as authority for the following proposition: "[In] a case where the vendee of a land contract is entitled to the benefit of insurance carried upon the premises by the vendor, the insurer is not entitled to be subrogated to the claim of the insured for the unpaid purchase money, upon its satisfaction of the policy following a loss."

In the *Godfrey* case it appears that Alcorn contracted to sell and convey a house and lot to Godfrey and Chase for $1,000 (that was in 1921), $350 of which was paid down and $650 was covered by notes. A year or so later Alcorn insured her interest in the property for $500. While this policy was in force and when the unpaid principal balance of the purchase price was $350, the house burned. The insurance company paid Alcorn, took an assignment of the indebtedness, and then assigned it to one Beatty, who eventually sought to enforce collection. In reversing a judgment in Beatty's favor, this court said:

"In the absence of an agreement therefor, the only right of subrogation the insurance company could have had must grow out of some equity arising for its benefit from the nature of the transaction. Subrogation is essentially a creature of equity, and is called in play by the chancellor only when it is necessary to bring about an equitable adjustment between the parties. We fail to see, therefore, what equity there existed in favor of the insurance company to justify it being indemnified by Alcorn for the loss, when it had for a stipulated compensation insured her to the extent of her interest. It had merely done for compensation that which its contract required it to do, and in pursuance of the business it was created to engage in."

\* \* \* \* \* \*

"We are not unmindful of the fact that there is a diversity of authority on the question whether an insurance company who pays a loss to a lienholder is entitled to subrogation where there is no agreement for the same, but we are convinced the rule herein stated is the sounder and better one, and that its application will come nearer bringing about justice in each case, and we likewise are bound by the Kentucky authorities cited which we conceive to be based upon purer and higher equitable principles than those cases holding the contrary view."

The two earlier decisions relied on by the court, American Bonding Co. v. First National Bank, 27 K.L.R. 393, 85 S.W. 190, and Stewart v. Commonwealth, 104 Ky. 489, 47 S.W. 332, 20 K.L.R. 686, were cases holding that an indemnitor against employe dishonesty and sureties on a circuit clerk's bond were not subrogated so as to enforce reimbursement against innocent victims of the dishonesty. These cases adhered to the principle stated as follows in Howell v. Commissioner of Internal Revenue, 8 Cir., 69 F.2d 447, 451:

"Although the ordinary surety or guarantor is a creditor of the principal debtor, the same cannot be true of an indemnitor who does not undertake to assume or discharge the obligations of another, but has, on his own account, contracted to pay a sum of money upon the occurrence of a certain event, usually the happening or the ascertainment of a loss. There is no privity, either actual or implied, between the promisor in the undertaking the loss from the nonperformance of which is indemnified against and the indemnitor, and the latter, if the loss occurs, *does not, by payment of it, discharge any one's obligation but his own.*" (Emphasis added.)

In the *Godfrey* case it was held also that the vendee, who bore the risk of loss as between himself and the vendor, nevertheless received the benefit of the insurance policy so that the unpaid balance of the purchase-money debt was extinguished and satisfied. We think such a result is untenable, and particularly would it be so in a case arising after the enactment, in 1950, of KRS 304.652. That statute provides that the insurance can be applied only to the interest of the person named in the policy, whereas if it operates to extinguish the debt the real beneficiary is the debtor, who is not named in the policy. Technically, the insured creditor would not be benefited at all, because, if he had not procured the insurance, he could enforce the full amount of the debt against the purchaser anyway. So far as the creditor is concerned, holding the insurance creditable against the debt would merely substitute one debtor for another—the insurance company in lieu of the purchaser—amounting to a sort of subrogation in reverse.

Our research of the question indicates to us that even aside from the effect of KRS 304.652 the weight of authority is against the result reached in *Godfrey*. In the very early case (1842) of Carpenter v. Providence Washington Insurance Company, 16 Pet. (U.S.) 495, 10 L.Ed. 1044, 1047, Mr. Justice Story wrote as follows:

"No doubt cases exist that the mortgageor and the mortgagee may each separately insure his own distinct interest in the property. But there is this important distinction between the cases, that where the mortgagee insures solely on his own account, it is but an insurance of his debt; and if his debt is afterwards paid or extinguished, the policy ceases from that time to have any operation; and even if the premises insured are subsequently destroyed by fire, he has no right to recover for the loss, for he sustains no damage thereby; neither can the mortgageor take advantage of the policy, for he has no interest whatsoever therein. On the other hand, if the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortgagee, if it does not exceed the insurance. But then, upon such payment, the underwriters

are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgageor, either at law or in equity, according to circumstances; for the payment of the insurance by the underwriters does not, in such a case, discharge the mortgageor from the debt, but only changes the creditor."

In a case decided two years before *Godfrey* (1924), the Court of Appeals of Maryland wrote the following exposition of the subject:

"The mortgagor and mortgagee may each insure his own interest; the first insures the property, which he may do for its full value as the owner thereof, the latter, to the extent of his debt, and no farther. The first, notwithstanding the incumbrance on his property, is entitled to recover the full amount of his loss, within the limits of the insurance; the latter, if the premises are destroyed by fire before the extinguishment of the mortgage, has the right to be paid his debt by the insurers, if not more than the insurance; and the underwriters, in such a case, become entitled to the debt, and can recover the same from the mortgagor, and are subrogated to the rights of the mortgagee. The payment of the insurance does not discharge the mortgagor from the debt, but the insurers become his creditors and have a right to an assignment of the mortgage debt from the mortgagee. The mortgagor derives no benefit from a policy covering the interest of the mortgagee alone, but is bound to pay the mortgage debt to the insurers when they become his substituted creditors. There is no privity in law or fact between the mortgagor and mortgagee, in such a case, and the mortgagor can take no advantage of the policy of the mortgagee for his debt." Frontier Mortgage Corporation v. Heft, 146 Md. 1, 125 A. 772, 776.

The same rule is stated in both *Couch* and *Appleman* in their texts on insurance. "Where the mortgagee obtains a policy insuring his own interest, and after loss recovers from the insurer the full amount of the mortgage debt, the insurer is entitled to be subrogated to the rights of the mortgagee under the mortgage *even though the policy does not contain a subrogation provision*. That is to say, where a policy issued to the mortgagee, procured by him and so written to cover his interest only, the owner can claim no rights under it and the insurer may be subrogated as against the owner-mortgagor." (Emphasis added.) Couch on Insurance 2d, § 61.355 (Vol. 16, p. 423). See also Appleman on Insurance, § 2186 (Vol. 4, pp. 65–66).

■ "If the mortgagee, or one in like position, is the party insured and the policy is written so as to cover his interest only [which, as we have said, is the effect of KRS 304.562 in this case], insurer, on payment to the mortgagee, becomes subrogated pro tanto to the rights of the mortgagee against the mortgagor, even though the policy contains no subrogation clause purporting to give such right to insurer; and this is particularly true where the mortgagee gives a written assignment of its claim to insurer or where the policy makes this right of subrogation a contract right." 46 C.J.S. Insurance § 1213, p. 183.

In this instance the policy issued by Twin City to the Kinkers contained a standard subrogation clause, but in view of the fact that the right does not depend on it we need not determine whether it literally applies under the circumstances of the case.

■ If the contract between Hannah and Dunaway had provided that Hannah would keep the property insured, or that Dunaway would be liable for the premiums payable for insurance procured by or issued to Hannah, the effect as between them might have been such as to render nugatory any right of subrogation on the part of the insurer. See Couch on Insurance, § 61.356. But that, of course, was not the case. We hold, in accordance with the authorities cited above, that Twin City was not an insurer of Dunaway and that Dunaway is not entitled to any benefits, ei-

ther directly or indirectly, under its policy. Godfrey v. Alcorn, 215 Ky. 465, 284 S.W. 1094, 51 A.L.R. 925, is therefore overruled, as is the dictum contained in the final paragraph of Mattingly v. Springfield Fire & Marine Ins. Co., 120 Ky. 768, 83 S.W. 577. This comports, incidentally, with Combs v. American Ins. Co., 296 Ky. 535, 177 S.W. 2d 881, 883, in which it was held that if a mortgagor forfeits his interest in a policy covering both himself and the mortgagee, so that only the mortgagee remains insured, and the insurer pays the mortgagee for a loss, the insurer is subrogated to the mortgagee's rights against the mortgagor without any express provision to that effect in the insurance contract.

After the date of the fire Dunaway paid Hannah an additional $200 on the purchase price, and eventually Hannah sold the lot to another purchaser for $1,225, thus reducing the balance of Dunaway's debt from $3,450 to $2,025. Buckeye contends that this sale terminated any right on Hannah's part to enforce collection of the balance and, in effect, that there remains no right to which Twin City could be subrogated. This contention overlooks the fact that the judgment of the trial court awards Hannah a recovery of the balance against Dunaway and that the only party who has appealed from any aspect of the judgment is Twin City.

Immediately after the fire Dunaway was entitled to collect the amount of his loss from Buckeye. He could have used it to restore the building, continuing to pay the installments falling due under his contract with Hannah, or he could have paid Hannah in full and taken a deed to the lot, using the balance of the insurance payment as he saw fit. In either event Hannah would have had no loss and, therefore, Twin City nothing to pay. Had Twin City at once paid Hannah $3,450, representing the balance owed by Dunaway, it would have succeeded to Hannah's rights against Dunaway.

The net result of what actually did take place (subject, of course, to the addition of interest as may be applicable) is that Buckeye now owes Dunaway $4,500 and Dunaway owes Hannah $2,025. Twin City also is liable to Hannah for $2,025 but is entitled to recover over against Dunaway. A great deal of red tape would be cut by a judgment directing Buckeye to pay Hannah $2,025 and Dunaway $2,475.

The judgment is reversed for entry of a new judgment consistent with this opinion.

All concur.