DICKINSON, Justice,
dissenting:
¶ 25.[W]herever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim equitas sequitur legem[6] is strictly applicable.
Magniac v. Thomson, 15 How. 281, 299, 14 L.Ed. 696 (1853). For decades, our courts have followed this time-tested, venerable maxim.[7] Today, however, this Court takes *1245 a different view — one I believe will, over time, prove exceedingly ill-advised and detrimental to our courts and litigants alike. I have without success attempted to persuade the majority that a chancellor’s equitable powers do not extend to issues controlled by law. I therefore respectfully dissent.
I.
¶ 26. In this contract case, the chancery court — in the name of its equitable powers — disregarded the parties’ contract and instead attempted to achieve what it thought would be a result more just than the law of contracts could deliver. However, absent some finding that the parties’ contract was unlawful, unconscionable, or void,[8] the terms of the contract, together with the principles of contract law, should have controlled the chancellor’s decision.
¶ 27. The Millers and McCurley contracted to buy and sell a particular parcel of real estate: 1119 N. 8th Avenue in Jones County, Mississippi.[9] The contract set out the terms of the sale, including the purchase price; the financing agreement; and how, when, and under what conditions title was to be conveyed. The contract adequately described the property. Other contract terms addressed matters such as late fees, taxes, and insurance, as well as some miscellaneous items. The contract rate of interest did not exceed the legal limit set by the Legislature.
¶ 28. After Hurricane Katrina swept across Mississippi, the Millers lived for a time in another house owned by McCurley. However, the contract for the Eighth Avenue property was still in effect, and nothing made performance of any contract obligation impossible. The contract required McCurley to convey title to the described property after the Millers paid the purchase price. The parcel still existed, despite the damage, and nothing in the contract placed the risk of loss on McCurley. Furthermore, nothing in the contract obliged the seller to repair the house before he could require performance by the buyers. The Millers were not renters; they were purchasers. Had the subject of the contract been an automobile, rather than a house, one wonders whether the majority would allow the chancellor — in the name of equitable powers — to relieve the buyer from the obligation to make ear payments.
II.
¶ 29. The majority cites Piaggio v. Somerville, 119 Miss. 6, 80 So. 342, 344 (1919), for the rules regarding when a party to a contract is excused from performance. The majority states that of the “three circumstances where performance is excused, ... [ojnly the second ... applies in today’s case, and it is applicable in excusing the Millersfs] performance under the contract, not McCurley’s performance.” That second situation is “the destruction, from no fault of either party, of an object which has to exist for there to be performance....”
¶ 30. While the severe damage to the house on the property was a catastrophe for the Millers, it did not render contract performance for either side impossible or excusable. The performance required of McCurley was to convey, after receiving $39,000 plus interest from the Millers, title *1246 to the property. The performance required of the Millers included, inter alia, paying McCurley and maintaining casualty insurance on the property. And even if one finds some merit in an impossibility-of-performance defense, the record reveals no such attempt. Furthermore, a careful review of the contract reveals that no duties on the part of either party were rendered impossible or otherwise excusable.
¶ 31. As for the insurance issue, the relevant considerations are whether the seller has insured the property for the benefit of the buyer, or whether the buyer has purchased insurance in accordance with a contract with the seller. Although Mississippi has no cases on point, the Georgia Supreme Court explained the issue as follows:
It is the general rule that, where the purchaser goes into possession under a binding executory contract for the sale of improved realty which the seller is able to convey, but where, before the transfer of the legal title is consummated, the improvements are destroyed by fire without the fault of either party, the loss falls on the purchaser as the owner of the equitable title. If in such a case the property was insured by the seller, he holds the insurance money which he may collect on the bargained property as trustee for the purchaser, subject, however, to his own claims for any unpaid purchase-money plus the insurance premiums.
Bruce v. Jennings, 190 Ga. 618, 10 S.E.2d 56, 58 (1940) (citing Mackey v. Bowles, 98 Ga. 730, 734, 25 S.E. 834 (1896); Bispham’s Equity, 5th ed., § 364; 27 R.C.L. 556; 66 C.J. 1052, 1053; Phinizy v. Guernsey, 111 Ga. 346, 349, 36 S.E. 796 (1900); Brady v. Welsh, 200 Iowa 44, 204 N.W. 235 (1925); 40 A.L.R. 603, 605, and cit.; Godfrey v. Alcorn, 215 Ky. 465, 284 S.W. 1094 (1926); 51 A.L.R. 925; 27 R.C.L. 559, § 298; 66 C.J. 1054, 1055 (§ 815); Mehrtens v. Knight, 29 Ga.App. 390, 390, 115 S.E. 506 (1923)).
¶ 32. Other authorities are in accord with the proposition that, where a contract requires the buyer to insure the property to protect the seller, then the following rule applies:
As between a vendor and purchaser, whichever must bear the loss resulting from an injury to the property sold generally is entitled to the proceeds of fire insurance thereon. Thus, if the loss falls on the purchaser, he or she is entitled to the benefit of the insurance proceeds, and to receive it on payment of the full purchase price. In such a case, a vendor who collects the insurance proceeds holds the proceeds as trustee, for the benefit of the purchaser, subject to any claims the vendor may possess for unpaid purchase money or insurance premiums. On the other hand, if the loss falls on the vendor, he or she normally is entitled to the insurance money.
46A C.J.S. Insurance § 1932 (2009) (citing Gillingham v. Phelps, 5 Wash.2d 410, 105 P.2d 825 (1940); Bruce, 10 S.E.2d at 56; Heinzman v. Howard, 366 N.W.2d 500 (S.D.1985); Standard Oil Co. v. Dye, 223 Mo.App. 926, 20 S.W.2d 946 (1929); Pasker v. Harleysville Mut. Ins. Co., 192 N.J.Super. 133, 469 A.2d 41 (App.Div.1983); Brown v. Nw. Mut. Fire Ass’n, 176 Wash. 693, 30 P.2d 640 (1934)).
¶ 33. The Millers agreed to purchase insurance to protect McCurley’s interest in the property. The Millers failed to do what they promised, so McCurley bought the policy, using the Millers’ money, as allowed under the terms of the contract. When Katrina destroyed the house, the insurance company paid the insurance proceeds to McCurley. The Millers undoubtedly are entitled to credit for the insurance *1247 proceeds, but they are not entitled to abrogate their contract.
¶ 34. After application of the insurance proceeds, the Millers’ balance was reduced to between seven and eight hundred dollars. Upon payment of that amount, according to the contract, they are entitled to take title. Nothing in the contract or the law, changes that fact. Nor does anything change the fact that the obligations of the parties, as spelled out in the contract, continued after August 29, 2005. The Millers were buying property under a real estate contract. The majority states that it became “impossible for McCurley to continue providing the property to the Millers,” as if he were a landlord. He was a seller. He had no continuing duties, other than those in the contract. Nothing in the contract required the seller to rebuild the house if it became damaged. Purchasers of property, real and personal, protect their interest in property with insurance, not with equitable remedies in chancery court.
¶ 35. We are a court of law, bound to apply it dispassionately. We may wish the Millers had not entered the contract, but they did. And having done so, they should now be entitled to remedies provided by law, not equity. For the reasons stated, I respectfully dissent.
RANDOLPH, LAMAR AND PIERCE, JJ., JOIN THIS OPINION.

. Equity follows the law.

.Senter v. Propst, 190 Miss. 190, 197 So. 100, 104 (1940) ("The rule is that equity follows the law.”) (citation omitted); Daughtrey v. Daughtrey, 474 So.2d 598, 603 (Miss.1985) ("equity follows the law”); Bowling v. Madi *1245 son County Bd. of Supervisors, 724 So.2d 431, 434 (Miss.App.Ct.1998) ("The more traditional analysis is that injunctive or other equitable relief ... is unavailable if there exists an adequate remedy at law (ellipses in original).

. The chancellor made no such finding in this case.

. It is not before this court whether more than one parcel with this address exists. That would have been a matter for the chancery court, if the litigants thought it important.