CASE 2.—ACTION BY PILSON SMITH AS ADMINISTRATOR
OF ROSS M. VAN METER AGAINST THE NEW
YORK LIFE INSURANCE COMPANY.—September 22,
1909.

## New York Life Ins. Co. v. Van Meter's Admr.

Appeal from Green Circuit Court.

I. H. THURMAN, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.   Insurance—Life Policy—Premiums—Loans.—A premium note
     provided for forfeiture except as to the right to the sur-
     render value, or paid-up policy which might be provided
     for in the policy or by statute. Held that, the policy having
     provided for extended insurance as one of the surrender
     values, the non-payment of the note did not bar insured's
     right to extended insurance.
2.   Insurance—Life     Policy — Forfeiture — "Indebtedness." — A
     policy provided that if any subsequent premium was not
     paid, and the policy was not surrendered, the insurance.
     after repayment of any "indebtedness," would be extended
     without request or demand for a term specified in an ac-
     companying table. A premium note provided that in settle-
     ment of any claim or benefit under the policy before the
     note should become fully paid the amount thereof should be
     deducted from the amount otherwise payable by the com-
     pany. Held, that the term "indebtedness," as used in such
     nonforfeiture provision, did not include premium notes.
3.   Insurance—Life  Policy—Nonforfeiture—Extended  Insurance.
     —A nonforfeiture provision in a policy provided that if any
     subsequent premium was not paid, and the policy was not
     surrendered, the insurance should be extended without re-
     quest or demand therefor, for the amount of its face dur-
     ing the term specified in the attached table, payable only
     if the insured died within the term, and that at the end of
     which time if the insured was living the policy should
     terminate. Held that, on insured's failure to pay a sub-

sequent premium, he had a vested right to extended insurance, without demand or act on his part, in accordance with the table for a term specified therein.

4.  Accord and Satisfaction—Elements.—Under the rule that accord and satisfaction applies only in cases where the amount due is in dispute or unliquidated, the acceptance by insured of less than one-third of the cash value of his policy during his life, both the cash value and extended insurance value being fixed by the policy, did not constitute an accord and satisfaction.

5.  Compromise and Settlement—Capacity of Parties—Fraud.— Insured, while mentally incapable of attending to business, was falsely notified by the insurance company that he had failed to avail himself of the provisions of his policy for nonforfeiture, and that it was no longer in force, when, in fact, he was entitled to extended insurance, which would have carried the policy beyond the date of his death. The letter containing such information inclosed a check for $10.70, stating that it was the full cash surrender value of the policy, when, in fact, the surrender value was more than twice that sum. Held, that insured's acceptance of the check did not constitute an available compromise and settlement.

JAMES H. McINTOSH, WM. MARSHALL BULLITT, WM. W. GRANT and BULLITT & BULLITT for appellant.

NOGGLE & GRAHAM for appellee.

Opinion of the Court by Commissioner Clay— Affirming.

Plaintiff, Pilson Smith, as administrator of Ross M. Van Meter, instituted this action against defendant, New York Life Insurance Company, to recover on an insurance policy for $1,000. Judgment was rendered in favor of plaintiff, subject to a credit of $10.70 and interest, and by the amount of a note executed by insured, and defendant appeals.

The policy was issued on October 6, 1898. The annual premium thereon was $30.30, payable on the 6th day of October in each year thereafter. Van

Meter paid the annual premium for the years 1898, 1899, and 1900. For the fourth annual premium he executed his note to appellant due in 12 months. On this note he paid one year's interest in advance. For the fifth annual premium he paid the insurance company $8.45 in cash and executed a note for $21.85, due March 6, 1903. On March 6, 1903, he paid on said note the sum of $10.33 and executed his ,note for $12, due in three months. Said note was not paid, and no further premiums were paid on the policy. On November 20, 1903, the company wrote · the following letter to Van Meter:

New York, November 20, 1903.

"Ross M. Van Meter, M. D., Greensburg, Ky.— Dear Sir: Default having been made in the payment of premium and interest due on October 6, 1902, under the above policy, and default having also been made in availing yourself of the provisions of the policy applicable in such event, the policy is no longer in force, and has been closed out on the Company's books for the customary cash surrender value allowed by the Company under such policies. As shown by statement below, the balance of cash surrender value is $10.70, for which we hand you enclosed the Company's check No. 52534 to the order of Ross M. Van Meter. Yours truly, John C. Mc-Call, Secretary.

Cash surrender value ..................... $41.00
Lien note ............................... 30.30
Balance .............................. $10.70

The check inclosed in the letter was as follows: "No. 52534. New York, Nov. 20, 1903. The New York Security and Trust Company, 46 Wall St.

Pay to the order of Ross M. Van Meter, Ten 70-100 dollars, in full settlement of surrender value Policy No. 893686. $10 70-100 F. H. Shipman, Asst. Treasurer. Theo. M. Banta, Cashier.''

Van Meter retained the check and used it to pay his hotel bill. After that time the company wrote him several letters, suggesting that he have the policy reinstated.

The policy in question contains the following benefits and provisions:

"1. Loans—With Interest at the Rate of Five Per Cent. Per Annum.

''The Company will make advances to the insured as loans on this Policy within the month of grace allowed in payment of premiums, on application to the Home Office, at the third or any subsequent anniversary of the insurance, within the Accumulation period, under the terms of the Company's loan agreement then in use, and the following conditions:

''First. That premiums have been paid in full to the time when the loan is made, including the premium for the entire insurance year then beginning.

''Second. That the amount loaned at any time shall be such as the insured may desire, not to exceed the sum shown in the table on the preceding page. The amount of any loans shall include any previous loan then unpaid.

''Third. That this policy shall be duly assigned to the Company as collateral security for the loan, and deposited at the Home Office. A duplicate of the Loan Agreement, which is also a receipt for the policy, will be furnished to the insured.

''Fourth. That interest in advance at the rate of 5 per cent. per annum shall be paid on all loans from the date of the loan to the next anniversary of the in-

surance, and annually in advance thereafter, if the loans are renewed, until they are paid off.

"Fifth. That the loans shall be made for the period ending upon the next succeeding anniversary of the insurance, and may then be renewed simply by payment of the insurance premiums falling due and interest in advance, as above. Thus the loan may be renewed from year to year, at the option of the insured, until the completion of the Accumulation period.

## "2 Nonforfeiture.

"This policy can not be forfeited after it shall have been in force three full years as hereinafter provided:

"First. If any subsequent premium is not duly paid, this Policy will be endorsed for the amount of paid-up insurance payable at the death of the insured, specified in the table on the preceding page, less the value of any indebtedness on this Policy, provided demand is made therefor with surrender of this Policy within six months after such nonpayment; or,

"Second. If any subsequent premium is not duly paid, and if this policy is not surrendered as provided in the preceding clause, the insurance under this policy will, after the repayment of any indebtedness, be extended without request or demand therefor, for the amount of One Thousand Dollars, during the term provided in the table on the preceding page, payable only if the insured dies within said term. At the end of said term, if the insured is then living, this Policy shall cease and determine.

"Third. The insurance provided for in the two preceding clauses shall be based upon completed insurance years only, and shall be subject to the con-

ditions of this Policy, but without further payment of premiums and without loans, participation in surplus, or premium-return."

Then follow other provisions, which it will be unnecessary to consider.

The table referred to in the nonforfeiture provision is as follows:

"Table of Loans and of Surrender Values in Paid-Up Insurance, or Extended Insurance. Under the Conditions Specified on the Next Page.

| At End of | Loans | Surrender Values | |
| | | Paid-up Insurance | Extended Insurance for $1,000 for the Term of |
| --- | --- | --- | --- |
| 3rd year | $41 | $150 | 4 years, 8 months |
| 4th year | 57 | 200 | 7 years, 6 months |
| 5th year | 75 | 250 | 10 years, 4 months |
| 6th year | 92 | 300 | 12 years, 7 months |

The premium lien note executed by decedent on October 6, 1901, for $30.30, is as follows:

"Premium Lien Note.

"30.30.          Louisville, Ky., October 6th, 1901.

"Twelve months after date I promise to pay to the order of the New York Life Insurance Company, at the office of the said company in the city of New York, the sum of thirty and 30-100 dollars, with interest in advance at the rate of five per cent. per annum (for value received); being for premium due October 6, 1901, on policy No. 893686 issued by said Company on the life of Ross M. Van Meter.

"It is understood and agreed:

"1. That this note may be renewed, if the interest thereon and subsequent premiums on said policy are duly paid.

"2. That unless said interest and premiums are duly paid, said policy and its accumulations shall immediately become forfeited and void, except as to the right to a surrender value or paid-up policy, which may be provided in said policy or by the statute.

"3. That in the settlement of any claim, or any benefit under said policy, before this obligation shall have been fully paid, the amount thereof shall be deducted from the amount otherwise payable by said company.

"Signature of the person for whose benefit the insurance is effected:                              ESTATE.

"Signature of the person whose life is insured:

"R. M. VAN METER."

The blue note executed by Van Meter on March 6, 1903, was as follows:

"Pol. 893686.                              March 6th, 1903.

"Without grace, three months after date I promise to pay to the order of the New York Life Insurance Company, twelve ——— dollars, at Bank of Commerce, Louisville, Ky., value received, with interest at the rate of 5 per cent. per annum. This note is given in part payment of the premium due October 6th, 1902, on the above policy, with the understanding that all claims to further insurance, and all benefits whatever, which full payment in cash of said premium would have secured, shall become immediately void and be forfeited to the New York Life Insurance Company if this note is not paid at maturity, except as otherwise provided in the policy itself.

"$12.00                    Name: Ross M. Van Meter.

"Address: Greensburg, Ky."

The provisions of this note are the same as those contained in the blue note for $21.85 executed October 6, 1902.

It is the contention of counsel for appellant (1) that the acceptance of the check for $10.70 by Dr. Van Meter was a full and complete settlement of all his rights under the policy of insurance; (2) that Dr. Van Meter used the reserve on his policy for the purpose of paying premiums, and, having applied the reserve in that way, he could not afterwards apply it to the purchase of extended insurance; that being the case, the policy was not in force at the time of his death. We will first discuss the second proposition.

In the case of Drury's Adm'x v. New York Life Insurance Co., 115 Ky. 681, 74 S. W. 663, 25 Ky. Law Rep. 68, 61 L. R. A. 714, 103 Am. St. Rep. 351, the policy of insurance was almost identical with the policy involved in this action. The premium note executed by Drury was identical in terms with the premium note executed by Dr. Van Meter. Drury had paid three annual premiums on his policy. He then executed a premium note for the fourth annual premium. He failed to pay the principal or interest on the note at its maturity, and also failed to pay any part of the premium of $29.70 for the ensuing 12 months. In that case it was the contention of the company that Drury was entitled only to a paid-up policy; that by the execution of the premium note and his failure to pay the interest thereon and the succeeding premiums he had forfeited his right to extended insurance. In discussing this question this court said:

"It will be observed that extended insurance for the full amount of the policy is one of the surrender values expressly provided for, and the only one

which, under all conditions, is not forfeitable. Paid-up insurance is also a surrender value, but, to enable the insured to take advantage of this provision, the policy requires that the insured should within six months after failure to pay a premium surrender his policy and demand paid-up insurance. If the contention of the company is a sound one, the effect of the failure of the insured to pay the interest and premium note at maturity is to exactly reverse these conditions of the policy. In other words, it forfeits automatically the provision for extended insurance, and revives the provision for a paid-up policy, which had been forfeited by the assured's failure to make demand therefor and surrender his policy within six months. The law does not favor forfeitures, and will not assume that the assured intended by the execution of the note of July, 1900, to forfeit the right to extended insurance, which he had already acquired by the payment of three annual premiums on the policy. The only reasonable construction which can be put upon the language of the policy and note is that, on the forfeiture of the policy by the nonpayment of interest, assured forfeited all right to further participate in accumulations to receive dividends to be reinstated after the lapse of the policy, etc.; but did not surrender his right to extended insurance for the term earned by the premiums paid. Nor can we doubt that, if the insured had made a demand for paid-up insurance at the time of his default in the payment of the premium note and interest, the company would have been prompt to claim that he was not entitled to a paid-up policy, as he had failed at the proper time to make demand therefor, but only to such extended insurance as his interest in the policy would purchase

after the payment of his indebtedness to the company.''

But counsel for appellant contend that the reserve on the policy was used for the purpose of paying premiums, and that the insured was entitled to extended insurance only after the payment of any indebtedness. Conceding the proposition that the reserve could not be used for paying premiums and then for the purpose of purchasing extended insurance, the question arises: Was the reserve on the policy under discussion used for the purpose of paying premiums? Dr. Van Meter did not secure a loan on his policy and assign the policy to the company. If he had, he would have paid the fourth premium instead of executing his note therefor. The reserve was sufficient, after the payment of three premiums, to extend the policy for a period of four years and eight months; and yet, if appellant's position be correct, it was only sufficient to purchase extended insurance for two years at the most. But it is insisted that extended insurance is available only after the payment of any indebtedness against the policy. For the purpose of determining whether the indebtedness referred to covers a premium note, we have but to consider the terms of the note itself.

The second provision of the note provides for a forfeiture except as to the right of a surrender value or paid-up policy, which may be provided in said policy or by statute. One of the surrender values referred to is extended insurance. Therefore the note was given with the distinct agreement and understanding that its nonpayment did not affect the insured's right to extended insurance. Furthermore, the third provision of the note provided that, in the settlement of any claim or any benefit under

the policy before the note should become fully paid, the amount thereof should be deducted from the amount otherwise payable by the company. Thus it will be seen that the term "indebtedness," used in the second of the nonforfeiture provisions, was not intended to cover premium notes. Of course, the company might have provided for extended insurance after the payment of any indebtedness, including premium notes, loans on the policy, etc.; but we have no such case here. The very terms of the note itself show that it was to be deducted from the amount otherwise payable by the company, and was not considered such an indebtedness as would preclude the insured from obtaining extended insurance. Dr. Van Meter had a vested right to extended insurance for four years and eight months. The reserve on his policy was not used for paying premiums. He did not forfeit his right to extended insurance by executing premium notes which were not paid. We, therefore, conclude that appellant's contention on this point is without merit.

We next come to the plea of accord and satisfaction. It is the contention of appellant that the acceptance of the check for $10.70 and the appropriation of the money by Dr. Van Meter to his own use present a case of accord and satisfaction, and preclude his administrator from recovering on the policy. Appellee defends against this plea by charging that Dr. Van Meter was not at the time of the alleged settlement in fit mental condition to transact business. Upon this point the proof for appellee is to the effect that for several days prior thereto and at the time of the acceptance of the check Dr. Van Meter had been on a protracted spree, and that his mind was not in a condition to know and appreciate

his rights. On the other hand, the witnesses for appellant declare that his mind was perfectly clear, and that he was capable of attending to business. In this connection we may say that a simple computation, based upon the policy itself and the payments made thereon, shows, first, that the extended insurance value of the policy was sufficient to extend the policy beyond the time of Dr. Van Meter's death; second, that the cash value of the policy was more than twice $10.70, the amount claimed by appellant to be the cash value and sent by it to Dr. Van Meter.

Furthermore, the policy itself does not provide for a cash settlement. The only two settlements provided for by the policy are paid-up insurance or extended insurance. Not having applied for paid-up insurance within six months after the default in the payment of premium, Dr. Van Meter was by the terms of the policy entitled, without demand or request therefor, to extended insurance in accordance with clause two of the nonforfeiture provisions. The rule in regard to accord and satisfaction is that it is only in cases where the amount due is in dispute or unliquidated that the acceptance of a less sum than is due precludes a recovery of the balance. Cunningham v. Standard Const. Co. (Ky.) 119 S. W. 765. In this case there was nothing in dispute. Both the extended insurance value and the cash value of the policy were fixed. The appellant paid Dr. Van Meter only a little over one-third of the cash value of his policy. Certainly the acceptance of this sum did not constitute accord and satisfaction.

But it may be contended that the acceptance of the check was at least an election to accept a cash settlement, and that all his administrator is now entitled to is the balance of the cash surrender value

due at the time of the alleged settlement. There might be some merit in this contention if it appeared that the insured, with full knowledge of his rights, elected to settle on a cash basis. In nearly every case all the facts with reference to the value of an insurance policy are peculiarly within the knowledge of the company. The company should, therefore, deal with its policy holders in perfect good faith. In this instance the company did not notify Dr. Van Meter that the value of the policy in extended insurance was so much, while its cash value was so much. On the other hand, it simply notified him that he had failed to avail himself of the provisions of his policy, and it was, therefore, no longer in force and had been closed out on the books of the company. Accompanying the letter was the check for $10.70, stating that it was in full of the cash surrender value of the policy. As a matter of fact, Dr. Van Meter did not fail to avail himself of the provisions of the policy. At the time of the alleged settlement he was entitled, without demand or request therefor, to extended insurance which would have carried the policy beyond the day of his death. Here, then, the company, whether knowingly or by mistake, actually misled the insured as to his rights under the policy; and that, too, at a time when he in the opinion of many witnesses was incapable of attending to business. We, therefore, conclude that a settlement made under such circumstances should not be upheld in whole or in part.

Judgment affirmed.