## Sun Life Assur. Co. of Canada v. Crenshaw.

(Decided Feb. 4, 1936.)

WHEELER, WHEELER & SHELBOURNE for appellant.

BEN S. ADAMS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

The Central of Georgia Railway Company and the Oceam Steamship Company of Savannah, Ga., made

application to the Sun Life Assurance Company of Canada for a group insurance policy to be effective 12:01 a. m. on the 1st day of November, 1929, for a period of one year. On the 22d day of April, 1930, the Central of Georgia Railway Company made application to the Sun Life to extend the privilege of the policy "to the employees of the parent company, the Illinois Central Railroad Company." The Sun Life granted the extension of privilege requested. On October 20, 1930, the Sun Life issued a group policy to the Illinois Central System, agreeing to issue a certificate of insurance to employees in its employment for their protection.

John C. Crenshaw, from November 11, 1911, until April 12, 1933, was regularly and continuously in the employment of the Illinois Central System at stipulated monthly wages in its cab department at Paducah, Ky. On the 2d day of March, 1931, at the instance of an agent representing the Sun Life, he signed and delivered to him for the Sun Life an application "for group insurance to which his occupation entitled him" under the Illinois Central System plan, and thereby authorized the Illinois Central System "to make deduction" monthly of a sufficient sum from his wages to pay his portion of the premium due under the group policy. His application was accepted, and, on the same day, a certificate was issued to him by the Sun Life insuring him for the amount of $2,000, payable in the event of his death, "provided that such death shall occur while the policy is in force and the employee covered thereunder," designating Ura Crenshaw, his wife, the beneficiary. His certificate carries a total and permanent disability benefit clause and also a clause entitling him to a conversion privilege if he left the service of the Illinois Central system "for any reason whatever." The company therein agreed that "on the written request of such employee within thirty days after his leaving the service of the employer" to issue to him a policy upon his life "on any form of life or endowment insurance (excluding term insurance) then issued by the company, but without the total and permanent disability benefit or the double indemnity accident benefit, and agreed that such policy shall be for the same amount of insurance as he was insured under this policy, at the time of the can-

cellation of his certificate, and at the rate of premium charged by the company according to the table of rates then in use," etc. The certificate further provides that no insurance shall be in effect from the time he leaves the service of the employer until application is received and accepted "for conversion of insurance." On the second page of his certificate is printed a letter addressed to the holder, signed by J. A. Downs, president of the Central Illinois System, in which it is stated that this "certifies" that, "while your employment on the Illinois Central System continues, your beneficiary is protected in case of your death, and you, yourself, are protected in case of your total and permanent disability, prior to the age of sixty. The privilege of participating in this insurance is yours by reason of your employment on the Illinois Central System." The third page of the certificate sets out the total and permanent disability benefit clause, and also this statement:

"If a claim occur, the beneficiary, to insure prompt settlement, should make application to the assured's last employing officer of the Illinois Central System."

On the 22d day of January, 1932, the Sun Life issued another group policy to the Illinois Central System, commencing at noon, standard time, at Chicago, Illinois, on the first day of November, 1931." Clause 6 of this policy provides that it shall remain in force and continue "until written notice shall have been given to the company by the employer on the forms supplied by the company for that purpose to the effect that said employee is no longer in the service of the employer and requesting discontinuance of said insurance. If such notice be received at the head office of the company within two months after the employment shall have actually ceased; otherwise the unearned premium to be returned shall be calculated from the date on which said notice shall have been so received by the company. No employee shall be deemed to be assured hereunder after the company has received written notice from the employer that such employee has left his service." Clause 7 contains a separate incontestability clause as to the Illinois Central System and the employee. Section 12 reads:

"Individual Certificates.—The Company will issue the Employer, for delivery to each employee assured under this policy, an individual certificate setting forth the assurance protection to which such employee is entitled hereunder and to whom such assurance is payable, and such certificate shall also contain the Conversion Privilege as shown in Provision IX hereof."

In June, 1933, the Illinois Central System made application to the Sun Life for the issuance of still another group policy to be effective from noon on the 1st day of November, 1932, which is identical with that issued to it on the 22d day of January, 1932, except it does not contain the total and permanent disability benefit clause, which was accordingly issued.

The only certificate of insurance issued and delivered by the Sun Life to Crenshaw was the one issued March 2, 1931. After it was issued and delivered to him, he continued in the service at Paducah, Ky., of the Illinois Central System, working in its cab department. The Illinois Central System in conformity with the request contained in his application for the certificate of insurance, regularly and continuously deducted from his wages his portion of the premium on the group policy under which his certificate was issued until April 12, 1933, at which time Crenshaw became totally blind. Thereafter he continued to pay the premium to Bob Padgett, the ticket agent of the Illinois Central System at Paducah, until just before this action was filed. On account of his blindness, on the 12th day of April, 1933, he ceased to work for the Illinois Central System. Seventeen days thereafter, on the 29th day of April, 1933, he made application to the Sun Life for the disability benefits provided for in his certificate. On the following 29th day of July, he made formal proof of his disability to the Sun Life. It declined to recognize its obligation as evidenced by the certificate issued and delivered to him on the 2d day of March, 1931. This action was instituted to recover of it as per the terms of its certificate. At the conclusion of his evidence, both parties requested the court to direct a verdict in his or its favor. The court directed a verdict for Crenshaw.

The evidence in behalf of Crenshaw is uncontra-

dicted. The group policy which was in existence and in force on March 2, 1931, the date of his application and of his certificate, is not contained in the record. A photostatic copy of the group policy issued the 22d day of January, 1932, effective on the 1st day of November, 1931, and the original policy issued the 4th day of November, 1932, effective on the 1st day of November, 1932, are in the record.

The Sun Life, assuming that the policy in force on the 2d day of March, 1931, contains provisions identical with those of the policies produced in evidence, argues earnestly and vigorously that clause 6 of the copies of the policies produced as evidence, as we have quoted it, is controlling. It argues that the Illinois Central System was the agent of Crenshaw, and that its act of giving notice on March 28, 1932, under clause 6, informing it that Crenshaw had ceased to be in the service of the Illinois Central System from the 31st day of January, 1932, released it of all liability to him under its obligation, as evidenced by the certificate of insurance of date March 2, 1931. In the absence of the policy under which his certificate was issued, we are not authorized to take it for granted or to assume that it contained clause 6 as it is written in the copies of the policies now before us. Leaving this aside, the statement of the Illinois Central System made by its agent to the Sun Life that Crenshaw had ceased to be employed as from the 31st day of January, 1932, was incorrect and untrue. In addition to this, his certificate of insurance expressly provides that, if he ceased to be in the service of the Illinois Central System and gave notice to that effect, he was entitled to the benefit of the conversion clause thereof. He gave to the Sun Life, 17 days after he ceased to be in its service, on April 12, 1933, notice of his total permanent disability, which was the equivalent to notice he had ceased to be in the employment of the Illinois Central System, which according to the terms of the certificate entitled him to the benefits thereof, considering his admitted condition as the cause of his ceasing to be in its service. There is no provision in his certificate authorizing the Sun Life to cancel it either with or without notice from the Illinois Central System, with or without cause.

It is a matter of general information that the us-

ual certificates issued to employees **under group policies** contain this or similar language:

> "This individual certificate is furnished in accordance with the terms of ———— group insurance policy, which policy together with the employer's application thereof, constitutes the entire contract between the parties."

There is no such provision in Crenshaw's certificate. It is a complete contract between him and the Sun Life, covering its obligations and his rights thereunder, independent of the group policy. The total and permanent disability benefit clause reads:

> "If due proof shall be furnished to the Company that any employee assured hereunder, has, before attaining age of sixty and while such assurance on such employee is in full force and effect, become wholly and permanently disabled by bodily injury or disease, and has been, is, and will be permanently continuously and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation, the Company will commence at the expiration of six months after receipt of such proof to pay in full settlement of all obligations in connection with such employee under this policy, the amount of assurance effective on his life at the date on which such disability commenced, in installments, as follows," etc.

It should be observed that the company unconditionally agreed on the furnishing of proof of his disability to pay as per the tables set out in the certificate. It incorporates and makes a part of the policy the language of the president of the Illinois Central System, whereby it assures the holder of the certificate that the beneficiary of the certificate is protected in case of his death, and the holder in case of his total and permanent disability prior to the age of 60. This language of the certificate, though in the form of a letter signed by Downs, president, being incorporated therein, became, and is, as much a part of the certificate as any other provision thereof. According to it, Crenshaw was protected by the provisions of the certificate so long as he continued in the service of the Illinois Central System or until he became totally and

permanently disabled, which excludes the idea of terminating the certificate on notice for any cause whatsoever, given by the Illinois Central System to the Sun Life. The certificate itself plainly and indubitably conveyed to the holder the thought of the permanency of its protection until it terminated as therein' provided. It constitutes the contract of insurance between the Sun Life and Crenshaw, separate from, and entirely independent of, the provisions of the group policy. If it should be assumed that the group policy in force at the time the Sun Life issued and delivered to Crenshaw the certificate of insurance contains provisions identical with those n the ciopes now before us, the fact remains that the certificate is the sole and a complete contract between the Sun Life and Crenshaw, independent of the group policy under which it was issued.

Assuming that the policy under which his certificate was issued contains clause 12, hereinbefore copied from the policies presented in the record, the Sun Life unequivocally agreed to issue to Crenshaw a certificate "setting forth the assurance protection to which" he "is entitled" under the group policy. This, in effect, was an agreement on its part to issue and deliver to Crenshaw, an employee of the Illinois Central System, a certificate evidencing its obligation to him and his rights as against it, independent of the group policy. This is the effect of the certificate on which his action is based. Construing it from its four corners, the Illinois Central System, by its agent, was without right to give notice to the Sun Life that he had ceased to be in its service, and thus terminate his right or its liability under the certificate. Clause 6, conferring on the Illinois Central System the privilege of giving written notice to the Sun Life that an employee was no longer in its service, was solely for the benefit of the Illinois Central System, and thus was conferred upon it the privilege to determine its duty to the Sun Life to deduct from the wages of its employees and remit to it the premium due thereunder, as to such employee. The group policy and the certificate are written in the words selected by the Sun Life, and, if it intended to retain the right to terminate the certificate issued and delivered to Crenshaw on the giving of notice by the Illinois Central System that he had ceased to be in its service, it was its duty to incorporate in the

certificate language to this effect, or a provision making those of the group policy the master of the certificate.

Viewing the record as it is presented in the light of the rules of construction which we have so often reiterated in like cases [see Federal Surety Co. v. Guerrant, 238 Ky. 562, 38 S. W. (2d) 425; Haselden v. Home Ins. Co., 247 Ky. 530, 57 S. W. (2d) 459; Firemen's Ins. Co. v. Yarbrough, 234 Ky. 525, 28 S. W. (2d) 771; Fogg v. London & Provincial Marine & General Ins. Co., 237 Ky. 636, 36 S. W. (2d) 44; Travelers' Ins. Co. v. Turner, 239 Ky. 191, 195, 39 S. W. (2d) 216; Republic Life & Acc. Ins. Co. v. Hatcher, 244 Ky. 574, 51 S. W. (2d) 922], and measuring the right of Crenshaw to recover and the liability of the Sun Life to him under the disability benefit clause of his certificate, the giving of the notice by the Illinois Central System that he had ceased to be in its service in no way affected his right nor its liability thereunder. The certificate in this respect is controlling as to both of them.

It is our view that the court properly directed a verdict for Crenshaw.

The judgment is affirmed.

The whole court sitting.