## Sovereign Camp, W. O. W. v. Duncan.

(Decided May 18, 1937.)

674

J. W. GAINES and ERROL DRAFFEN for appellant.

H. B. KINSOLVING, JR., for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

William M. Duncan became a member of the local branch in Anderson county of the Sovereign Camp, Woodmen of the World, in April, 1904. The local branch of the organization in Anderson county was known as Camp No. 128. At the same time the Sovereign Camp, Woodmen of the World, a corporation organized under the laws of the state of Nebraska to do a general fraternal benefit insurance business in that state and elsewhere, issued and delivered to Duncan a policy which provided for the payment upon his death of $2,000 to his children who were named as beneficiaries. The policy contained this disability benefit provision:

> "In case he shall have maintained himself in good standing until he reaches the age of seventy years, and shall thereafter have become totally, permanently, phyiscally disabled by reason of old age, upon his complying with the laws of the Order there shall be paid to him from the Beneficiary

Fund an amount equal to ten per cent of that which would be due under the provisions of this Certificate if he were dead, and at the end of each year thereafter during his lifetime a like amount shall be paid to him for nine consecutive years. The amount, if any, remaining unpaid on this Certificate at his death shall be paid to his beneficiary."

The policy provided that the insured should pay to the insurer a premium or assessment of $3.05 monthly. Duncan paid this assessment until July, 1917, when the constitution and by laws of the association were amended at a biennial session of the Supreme Lodge, increasing the rates of all members 10 cents per month during the time the United States was at war. Duncan paid the increased rate until 1934 when he brought this action to recover $1,000 under the disability benefit provision of the policy. He alleged in his petition that the defendant issued and delivered to him in April, 1904, benefit certificate No. 7284, whereby it agreed and obligated itself to pay to his children named as beneficiaries therein the sum of $2,000 upon proof of his death, and that the policy also contained the disability benefit provision heretofore quoted. He alleged that he had paid all assessments due under the contract; that he attained the age of seventy-six years on October 7, 1934; and that he had been totally, permanently, and physically disabled by reason of old age since reaching the age of seventy years. He further alleged that beneficiary certificate No. 7284 was unlawfully and fraudulently procured from him by an agent of the company in September or October, 1929, and was then in the possession of the defendant, and he asked that the defendant be required to file the certificate as an exhibit. The defendant, in its answer, alleged that on September 27, 1929, the plaintiff voluntarily made written application to it for exchange of his old certificate No. 7284 for an equalized whole life certificate in the amount of $1,132, and that the application contained this provision:

"In consideration of such exchange, I hereby surrender my said benefit certificate to the Sovereign Camp of the Woodmen of the World, and I hereby, for myself and my beneficiaries, and for anyone claiming any right in, through or on account of said certificate release said Sovereign Camp of the Woodmen of the World from any and all liability thereunder, and I agree to abide by

the laws of the Sovereign Camp of the Woodmen of the World as they now are."

That on October 14, 1929, it issued to the plaintiff its equalized whole life certificate in the amount of $1,-132, and that this certificate provided that it was issued in consideration of the application for exchange of the old certificate and in the further consideration of the payment to the defendant of the amount of $3.15 monthly. In an amended answer, the defendant alleged that the plaintiff made written application for membership in the defendant association on April 10, 1904, and for the issuance to him of the benefit certificate in the amount of $2,000, and that in the application he consented that the application and all of the provisions of the constitution, laws, and by-laws of the association then in force, or which might be thereafter adopted, should constitute a basis for a form of any beneficiary certificate that might be issued to him by the defendant, and that the certificate provided that it was issued and accepted subject to all the laws, rules, and regulations of the association then in force, or which might be thereafter enacted; that on December 31, 1919, the rates of all members of the association were increased by an amendment to the constitution, laws, and by-laws of the association as amended and adopted at the biennial session of the Supreme Lodge in June, 1919, and after that date in order to have maintained his certificate in force for the full amount of the death, monument, and old age benefits previously provided, plaintiff would have been required to pay the rate of $115 per year or $9.97 per month in local dues; that it was provided, however, that he might continue to pay the rate theretofore required of him, to wit, $3.15 per month, and if he continued to pay the old rate, he would thereby elect to cancel the monument and old age disability benefits previously provided and to charge an interest-bearing lien against his certificate. It was further alleged in the answer that the plaintiff did not pay the increased rate after December 31, 1919, and that he thereby elected the cancellation of the monument and old age disability benefits and charging of an interest-bearing lien of $440 against his certificate; that it was provided the lien might be paid in one sum or installments with interest thereon at the rate of 4 per cent. per annum, and, if not paid annually, the interest was to be computed at the rate of 5 per cent. compounded annually; that the plaintiff failed to pay

any part of the lien or interest thereon; and that at the time he exchanged his old certificate for the equalized whole life certificate the lien and interest amounted to $700.78. In a reply, the plaintiff pleaded fraud and misrepresentation in the procurement of the exchange of the old certificate. Before the case was submitted, an amended petition was filed in which the plaintiff sought to recover two further payments of $200 each alleged to be due and payable to him under the beneficiary certificate No. 7284 for the years 1934 and 1935. The circuit court canceled the equalized whole life certificate which was issued to the plaintiff in October, 1929, in exchange for the original beneficiary certificate No. 7284 and the original certificate was reinstated in full force and effect and it was ordered to be returned to the plaintiff. It was further adjudged that the plaintiff had been totally and permanently disabled by reason of old age since he was seventy years of age, and that he was entitled to recover the seven payments of $200 each described in the petition, as amended, with interest thereon from the respective due dates.

When the certificate in question was issued, section 679 of the Kentucky Statutes read as follows:

"All policies or certificates hereafter issued to persons within the Commonwealth by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured, or the constitution, by-laws or other rules of the corporation, either as forming part of the policy or contract between the parties thereto or having any bearing on said contract, shall contain or have attached to said policy or certificate a correct copy of the application as signed by the applicant, and the portions of the constitution, by-laws or other rules referred to; and unless so attached and accompanying the policy, no such application, constitution, by-laws or other rules shall be received as evidence in any controversy between the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties. The said policy or certificate, application, constitution, by-laws or other rules shall be plainly printed, and no portion thereof shall be in type smaller than brevier. Provided, however, That nothing in this section shall be construed as apply-

ing to health certificates or constitutional receipts, or other evidences used in reinstatement of a policy or certificate.''

This statute applied to beneficial societies, such as this, before its amendment in 1906 (Laws 1906, c. 141, p. 479). Masonic Life Association v. Easley, 178 Ky. 56, 198 S. W. 569; Supreme Council Catholic Knights of America v. Wathen, 179 Ky. 64, 200 S. W. 320; Supreme Tent Knights of the Maccabees v. Dupriest, 235 Ky. 46, 29 S. W. (2d) 599, 601. The statute was amended in 1906 so as to except from its provisions fraternal societies which are under the supervision of a grand or supreme body and secure members through the lodge system exclusively. Acts 1906, c. 141, p. 479. The certificate in this case was issued before the amendment was adopted, and must be governed by the law which was then in force. Ferlage v. Supreme Tribe of Ben Hur, 153 Ky. 645, 156 S. W. 139; American Patriots v. Cavanaugh, 154 Ky. 653, 157 S. W. 1099; Supreme Council Catholic Knights of America v. Wathen, supra.

It is conceded that neither the application nor the constitution and by-laws of the society nor any amendment thereto was ever attached to the certificate. In discussing the effect of the statute upon a benefit certificate such as this, the court said in Supreme Tent Knights of the Maccabees v. Dupriest, supra:

"This statute became as much a part of the benefit certificate before us as if it had been written therein. Thereafter the statute was so amended as to make it inapplicable to societies such as appellant, but the rights of Dupriest, having become fixed when this certificate was issued, were not taken away by the amendment. To hold otherwise would permit an impairment of the obligation of this contract.''

The appellee, Duncan, complied with the provisions of his certificate to the letter, and for nearly thirty years paid the monthly premium specified therein. He was not bound by the amendment to the constitution and by-laws of appellant adopted in 1919, and when he exchanged his certificate in October, 1929, for a certificate for little more than one-half of the principal amount of the original contract, and with the disability benefits eliminated, the exchange was without consideration. Even if there had been a consideration for the ex-

change, the judgment canceling the new certificate and reinstating the old one is correct. The representations made by appellant's agent to appellee, at the time the exchange of certificates was made, were, in substance, that the amendment to the constitution and by-laws of the association adopted in 1919, to become effective January 1, 1920, applied to all members alike and was required by the laws of the different states in which appellant operated, including the state of Kentucky; that the officers had no choice other than to adopt some plan of increased rate adjustment; that the plan adopted offered a new rate for every member of the association; and that members who continued the payment of the old rates had interest-bearing liens established against their beneficiary certificates which were to bear interest at the rate of 4 per cent. per annum, and if not paid annually, the interest was to be computed at the rate of 5 per cent. and compounded annually; that the lien and accumulated interest against appellee's certificate was then approximately $701, and that unless he would accept an equalized whole life certificate in the sum of $1,132 in exchange for his $2,000 certificate with the disability benefit provision eliminated, his whole certificate would, in a few years, be without value; and that the only way he could save any part of his old certificate was to sign the application to exchange it for the equalized whole life certificate. The facts stated to appellee by the appellant's agent, which induced the exchange, were not true so far as appellee's certificate was concerned, and the exchange was obtained through a misrepresentation of facts. If the misrepresentation be treated as one of law, it is a case where the appellant possessed superior knowledge of the appellee's rights, and the relationship between the parties was such that appellee had the right to rely upon appellant to make a full disclosure of the facts and to advise him as to his rights. The fact that his rights under the original certificate were misrepresented to him, whether intentionally or unintentionally, entitles him to a cancellation of the contract by which he surrendered the certificate. In New York Life Insurance Company v. Van Meter's Adm'r, 137 Ky. 4, 121 S. W. 438, 442, 136 Am. St. Rep. 282, it was said:

> "In nearly every case all the facts with reference to the value of an insurance policy are peculiarly within the knowledge of the company. The

company should therefore deal with its policy holders in perfect good faith.''

In Pomeroy's Equity Jurisprudence, vol. 2, sec. 902, the author, in discussing the various classes of instances in which the duty rests upon one party to a transaction having knowledge of the facts to discover them to the other, says:

"The third class includes those instances where there is no existing fiduciary relation between the parties, and no special confidence reposed is expressed by their words or implied from their acts, but the very contract or other transaction itself, in its essential nature, is intrinsically fiduciary, and necessarily calls for perfect good faith and full disclosure, without regard to any particular intention of the parties. The contract of insurance is a familiar example.''

We think that, under the facts of this case, the cancellation of the certificate issued to appellee in October, 1929, was authorized, and the judgment is accordingly affirmed.