## National Council of the Knights and Ladies of Security v. Rowell.

Dec. 6, 1938.

As Modified on Denial of Rehearing Jan. 31, 1939.

336

J. R. LAYMAN for appellant.

FAUREST & FAUREST and J. M. CAMPBELL for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The Security Benefit Association, hereinafter called

the association, and formerly known as the National Council of the Knights and Ladies of Security, is a fraternal benefit insurance corporation created under the laws of the State of Kansas with home offices at Topeka in that state.

On July 16, 1914, it issued to Almeth W. Rowell a beneficiary certificate whereby it promised and agreed to pay to his wife, Lula Rowell, as beneficiary, the sum of $1,000 on the death of insured, provided he complied with all the provisions of the constitution and by-laws of the association then in force or that might be thereafter enacted.

On January 2, 1935, insured died and thereafter Lula Rowell, as beneficiary, instituted this action to recover the principal sum of the policy, alleging that insured had complied with all the terms and conditions of the constitution and by laws of the association as provided in the certificate.

By answer, the association admitted that it issued the certificate to insured but alleged in substance that the regular monthly assessment in the sum of $2.10 together with an extra assessment in the sum of $2.10 became due and payable on October 1, 1934; that insured did not pay such assessment on that date nor within the month of October that he had as days of grace within which to pay same and therefore, under the constitution and by laws of the association, which were set out in the answer, the certificate became forfeited at midnight of October 31, 1934, and insured thereby became automatically suspended from the beneficial membership and all rights under such certificate.

By reply, plaintiff traversed the affirmative allegations of the answer and further alleged that on or about October 22, 1934, and before the expiration of the time in which insured had to pay the assessment for October, the association through the duly authorized officers wrote a letter to insured in which it was stated that because of certain conditions referred to it was necessary to levy an extra assessment for the last three months of 1934; that a large number of current cost members had exchanged certificates to one of American Experience Level Rate Form which gave them protection on a permanent basis and their certificates provided full non-forfeiture and options comparable to any other insurance contract; that such special representative whose

name was countersigned to the letter would call upon insured shortly thereafter for the purpose of explaining the status of the current cost membership and the advantages and benefits to be obtained by changing for a certificate. This letter was countersigned by Roy Packard as representative of the association. She further alleged that after the receipt of the letter by insured, the special representative who countersigned the letter called upon him before the expiration of the time for the payment of the assessment for October, 1934, and sought to procure the surrender of the certificate and fraudulently and for the purpose of deceiving insured represented to him that the certificate was no good at all and was dead; that there was no one to whom to pay further premiums or assessments and no place to send payment of assessments; that he would take up the certificate and issue a new one in another company but that insured would have to be examined again; that he could not pass an examination in his then physical condition; that both she and insured believed the representations to be true and relying thereon made no further effort to learn as to what assessments had been made for the month of October or to pay same; that insured received no notice of assessment for the months of October, November and December, 1934; that by reason of such fraudulent representations on the part of the representative of the association it was estopped to claim that the certificate and rights of insured thereunder were forfeited.

By rejoinder the association denied the affirmative allegations of the reply and alleged that from time to time it notified insured of the status of his certificate and of his right to exchange the benefit certificate for an adequately rated 4 per cent American Certificate without medical examination and notified him by letter concerning the levying of the extra assessment and that each month, including October, November and December, 1934, it published an official paper which carried notice to the beneficiary members that their assessment must be paid on or before the last day of the month and of the levying of the extra assessment; that such official paper under the constitution and by-laws of the association was official notice to members of all matters therein contained; that such official paper was regularly sent to insured and other beneficiary members. The affirmative allegations of the rejoinder were traversed by subsequent pleadings thus completing the issues.

During the progress of the trial the association tendered and offered to file an amended answer alleging that the assessment for September had not been paid within the time provided in the policy and therefore the policy under the constitution and by-laws of the association automatically terminated and became forfeited but the court refused to permit the answer to be filed. This appeal is from the judgment in conformity with the verdict of the jury finding for plaintiff.

It is first argued that the court should have sustained appellant's motion for a peremptory instruction in its favor. Appellee testified that at the time the special representative of appellant called on her husband in October, 1934, the latter was and had been for a long time prior thereto as well as thereafter confined to his home and most of the time to his bed by a serious illness; that she regularly went to the post office and received letters for the family; that she did not receive the official paper issued by appellant for the months of October, November or December, 1934, and received no notice of assessments on the certificate for such months. On recall she stated that she received the official paper up to time the special representative called upon her husband, but that is immaterial since, as will presently appear, she and her husband had a right to rely on the statements of the special representative sent by the company to advise them concerning the insurance. She further testified in substance that when the special agent called he tried to persuade her husband to surrender his certificate and to accept a policy in another company at a greatly increased rate; that when they inquired about continuing the payments on the old certificate, he stated that the association was broke or insolvent and that there was no one to whom they could pay or send payments for assessments; that when her husband asked about rights under the old certificate the representative told him he "was just out of luck." Other witnesses over objections of appellant were permitted to testify that at the time this representative of appellant was in Leitchfield and talked to appellee and her husband he made similar statements to other persons holding beneficiary certificates in the association or to persons representing such holders.

The special representative denied that he made the statements attributed to him by appellee and others, and

testified that he merely advised the insured to surrender the certificate he held and have it changed to the different form of certificate referred to in the pleading. A number of officers and employees of appellant testified that notices of assessments and the official paper issued by appellant were sent to insured and all other holders of certificates for the months in controversy. However, they all testified that they did not personally know whether the paper and notices were sent to insured but that they followed the usual custom of sending them out regularly from a complete list of holders of certificates.

It is contended by counsel for appellant that appellee was mistaken in her testimony concerning the statements made to insured and to her by the representative of the association; that the agent was in fact speaking about the original organization which was replaced by the present one. However, appellant admitted in its pleading that the two were one and the same and there was merely a change in name and, furthermore, the evidence of such agent discloses that he said nothing to appellee or her husband about the original organization being replaced by a new one. It is quite apparent that the special agent who called upon insured either wittingly or unwittingly made statements or representations concerning the insurance that misled them. Otherwise, it is unbelievable that they would have ceased payment upon this certificate or policy which they had carried for years at a time when insured was seriously ill.

The duty of appellant and its legally constituted representatives to deal fairly with policy holders and to make full and complete disclosures in cases of this character is clearly set out in Sovereign Camp of the Woodmen of the World v. Duncan, 269 Ky. 673, 108 S. W. (2d) 655. That opinion quotes from New York Insurance Company v. Van Meter's Adm'r, 137 Ky. 4, 121 S. W. 438, 136 Am. St. Rep. 282, wherein it is said:

"In nearly every case all the facts with reference to the value of an insurance policy are peculiarly within the knowledge of the company. The company should therefore deal with its policyholders in perfect good faith." 108 S. W. (2d) 658.

The opinion also refers to a discussion in Pomeroy's Equity Jurisprudence, Vol. 2, page 902, relating to various classes of instances in which it is the duty of

one party to a transaction having knowledge of the facts to disclose them to the other and wherein it is said:

"The third class includes those instances where there is no existing fiduciary relation between the parties, and no special confidence reposed is expressed by their words or implied from their acts, but the very contract or other transaction itself, in its essential nature, is intrinsically fiduciary, and necessarily calls for perfect good faith and full disclosure, without regard to any particular intention of the parties. The contract of insurance is a familiar example."

The evidence for appellee fully sustains the allegations of her pleading respecting the misrepresentation on the part of the representative of appellant, and therefore, under universally recognized rules, the case was properly submitted to the jury and this court on a review is not at liberty to disturb the jury's finding.

It is further asserted by counsel for appellant that even though Packard made the statements attributed to him, insured and his wife had in their possession information and facts showing conclusively that the statements were not true and therefore were not authorized to rely on the statements of the agent. Appellee claims that she wrote the company or to its officers concerning the matter but this is denied. Be that as it may, the company had advised insured that a special agent would be sent to him to discuss matters relating to his insurance certificate. In such circumstances and as indicated in Sovereign Camp of the Woodmen of the World v. Duncan, supra, the insured had the right to rely upon the representations of appellant to make a full and complete disclosure of the facts concerning his rights under the beneficiary certificate.

It is most earnestly contended by appellant that the court erred in admitting the evidence of other witnesses concerning statements made by the agent of appellant similar to the one it is claimed he made to appellee and her husband. Similar evidence was held competent in Head v. Oglesby, 175 Ky. 613, 194 S. W. 793. That opinion quoted from Jones on Evidence, saying [page 797], "It has often been held in civil cases that, on the question of intent to defraud, other similar acts

or representations at about the same time as the one in question are relevant.''

To the same effect see Bunch v. Bertram, 219 Ky. 848, 294 S. W. 805; Pulliam v. Gentry, 206 Ky. 763, 268 S. W. 557; Sessmer v. Commonwealth, 268 Ky. 127, 103 S. W. (2d) 647. The court by admonition to the jury limited this evidence to the purpose for which it might be considered as indicated in the foregoing authorities and it is our conclusion that it was admissible for such purposes. Question is made concerning the admission or rejection of other evidence but none of it is of a consequential nature or effect and without entering into detail we deem it sufficient to say that no prejudicial error was committed by the court in the admission or rejection of evidence.

What we have already said disposes of appellant's contention that the court erred in instructing the jury because a peremptory instruction in appellant's favor was not given. It is further contended, however, that the court erred in refusing to give an instruction offered by appellant submitting the question as to whether plaintiff or her husband had information to put them on notice of the fact that Roy Packard's statements were not true, if in fact he made the statements to which appellee testified; and that instruction No. 1 given by the court was erroneous in that it did not embody the same idea. No other criticism is made of the instruction given. What we have already said likewise disposes of these contentions. The instructions given by the court properly submitted to the jury every issue made by pleading and proof.

Finally it is argued that the court erred in refusing to permit the amended answer offered by appellant during the progress of the trial to be filed. Section 134 of the Civil Code of Practice provides in part:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or permit a pleading or proceeding to be amended * * * if the amendment[s] do not change substantially the claim or defense * * *.''

Under this section the trial court is invested with a broad discretion allowing amendments to be filed. Palmer v. Smith, 204 Ky. 82, 263 S. W. 773. The only limitation upon such discretion is that the amendment

must be in furtherance of justice and not change substantially the claim of defense. Stewart v. Stovall, 202 Ky. 367, 259 S. W. 721. Here the amendment was offered after the parties had gone into trial and many months after the issues had been completed and after a number of depositions had been taken. The amendment would substantially change the defense. All facts pleaded in the answer were in the possession of appellant from the time the action was instituted. In such circumstances it is manifest that there was no abuse of discretion upon the part of the court in not permitting the amendment to be filed. See City of Louisville v. Lausburg, 161 Ky. 361, 170 S. W. 962.

Judgment affirmed.