# Equitable Life Assur. Soc. of the United States v. McCarty's Committee.

### Dec. 8, 1939.

Wm. Marshall Bullitt, Eugent B. Cochran and Bruce & Bullitt for appellant.

John Wheeler and Martin O. Wheeler for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Reversing.

On June 1, 1929, the Equitable Assurance Society of the United States, hereinafter referred to as the Equitable, issued to the Consolidation Coal Company, hereinafter referred to as the Company, a group life insurance policy whereby it insured such employees of

the Company who had elected, or should in the future elect, to become insured against loss of life, or in lieu of loss of life total permanent disability, while in the employ of the Company. This policy is what is known as contributory group insurance, since each employee contributes so much a month from his wages towards payment of the premium. Upon the employee making application and being accepted for insurance, a certificate was issued to him evidencing the insurance and the terms upon which it was issued. The certificate issued McCarty recited the group policy together with the employer's application constitutes the entire contract between the parties. The group policy provides it shall remain in force for a period of one year and that it can be renewed yearly, provided 75% of the eligible employees of the Company take the insurance and provided further that no less than 50 employees shall be insured under the policy.

John McCarty became an employee of the Company December 15, 1927, and was first issued a certificate in 1929, showing he was insured in the sum of $1250, which certificate contained the provision of the group policy covering permanent total disability. McCarty increased his insurance on December 15, 1929, to $1750, and on January 1, 1933, he again increased it to $2000. The Equitable and the Company agreed to eliminate the permanent total disability provision from the policy and after notice to the employees to that effect, a rider, effective August 1, 1932, was attached to the policy which from that date eliminated permanent total disability from the policy. In September 1932, the group policy was lapsed for failure of the Company to pay the premiums, and the Equitable issued a new policy to the Company effective on and after August 1, 1932, which omitted the provision covering permanent total disability. The employees were notified that the permanent total disability provision was omitted from this policy and new certificates were issued them under this second policy and request was made to the employees to surrender the certificates issued them under the old policy. About 90% of the 12,000 employees of the Company complied with this request, but McCarty did not.

McCarty continued to pay his premiums monthly until in June, 1937, at which time he lost his mind and was adjudged insane. After notice and demand, as required by the policy, were made upon the Equitable for

payment for permanent total disability, which was refused, McCarty's Committee instituted this action in October, 1937, to recover the full $2000 in payments of $36.24 per month, on account of permanent total disability suffered by McCarty in June, 1937. The Equitable traversed the allegations of the petition and then pleaded affirmatively that prior to McCarty's disability, the permanent total disability provision contained in the first policy had been eliminated therefrom by agreement between the Equitable and the Company in the form of a rider attached to the group policy; it further pleaded that the group policy issued in 1929 had lapsed for non-payment of premiums by the Company and that the new group policy, which did not contain a permanent total disability clause, became effective August 1, 1932. The affirmative allegations in the answer were controverted of record and the trial resulted in a verdict for the plaintiff. The Equitable seeks to reverse the judgment entered thereon because: first, the court erred in not giving a peremptory instruction in its favor; second, the judgment did not limit recovery to the duration of the disability.

This case involves the identical policy and similar certificates as were involved in Equitable Life Assurance Society of United States v. Green, 259 Ky. 773, 83 S. W. (2d) 478, and Equitable Life Assurance Society of United States v. Snipes, 274 Ky. 340, 118 S. W. (2d) 706, 707. There is no material difference in the issues or the evidence in this case from the Green and Snipes cases where this court held that as the total disability provision was not in effect when the permanent total disability occurred, the plaintiffs had no cause of action and peremptory instructions should have been given in favor of the Equitable. We quote, the following from the Snipes case, which it took from the Green case:

"It must be conceded that the rider to the policy, eliminated 'the total and presumably permaent' disability provision as of August 1, 1932. * * * If he became totally and presumably permanently disabled after August 1, 1932, such disability was not covered by the total and presumably permanent provision of the policy. * * * Green was insured prior to August 1, 1932, against the disabilities that will be both total and presumably permanent, but was not so insured thereafter."

Since McCarty's disability occurred after the per-

manent total disability clause was eliminated from the policy, he was not insured against such disability at the time he became insane, and the court should have given a peremptory instruction in favor of the Equitable.

Appellant contends that the judgment should be affirmed because McCarty never surrendered the certificate which entitled him to permanent total disability benefits, citing Sun Life Assurance Company of Canada v. Crenshaw, 262 Ky. 691, 91 S. W. (2d) 52; New York Life Insurance Company v. McCane, 276 Ky. 712, 124 S. W. (2d) 1057; National Council of Knights and Ladies of Security v. Rowell, 276 Ky. 335, 123 S. W. (2d) 1041. None of these cases have any bearing on the one before us. In the Crenshaw case the certificate issued the insured did not contain this provision which was in the certificate issued McCarty:

"This individual certificate is furnished in accordance with the terms of the Equitable group insurance policy, which together with the employer's application therefor constitutes the entire contract between the parties."

The court held in the Crenshaw case that a mistake by the employer in notifying the insurance company that the employee's services had been terminated did not relieve the insurance company from liability.

The McCane case did not involve group insurance, and the court there held a life insurance policy which contains disability benefits does not constitute two separate contracts but that the two provisions were integral parts of the same policy, and a pledge of the policy pledged all of insured rights thereunder. As we read the Rowell case, it is to the effect that the insurance company through its agents cannot mislead the insured as to the payment of premiums and then take advantage of its own misrepresentations.

We cannot see any reason or logic in appellee's position that because McCarty failed or refused to surrender his certificate of insurance providing for permanent total disability after such provision had been eliminated from the policy which covered the certificate, and indeed after such policy had lapsed and a second policy had been issued which did not contain such permanent total disability agreement, he can now recover for permanent total disability which accrued after the rider became effective and after the policy had lapsed. This certificate

768

which McCarty failed or refused to surrender was without force or effect after the permanent total disability provision had been eliminated from the group policy.

Finally, appellee asks us to overrule the Green and Snipes cases, and that is what would have to be done should we affirm this judgment. We have no doubt as to the soundness of these cases, and we not only refuse to disturb them but are following them here. As we are of the opinion the court erred in failing to direct a verdict in favor of the defendant, it is not necessary to discuss the second ground for reversal assigned by appellant.

The judgment is reversed and the case **remanded** for proceedings consistent with this opinion.